UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEBORAH J. LIVINGSTON, et al.,
individually and on behalf of others similarly situated,

                              Plaintiffs,

v.                                                       1:20-CV-1030
                                                         (GTS/CFH)
TRUSTCO BANK, et al.,

                              Defendants.

_____

APPEARANCES:                                    OF COUNSEL:

CHERUNDOLO LAW FIRM, PLLC                        J. PATRICK LANNON, ESQ.,
   Counsel for Plaintiffs                        JOHN C. CHERUNDOLO, ESQ.
AXA Tower One, 15th Floor
100 Madison Street
Syracuse, NY 13202

KALIEL GOLD, PLLC                               JEFFREY D. KALIEL, ESQ.,
   Co-Counsel for Plaintiffs                     SOPHIA GOREN GOLD, ESQ.
1100 15th Street NW, 4th Floor
Washington, DC 20005

WILENTZ GOLDMAN & SPITZER PA                     KEVIN P. RODDY, ESQ.,
   Co-Counsel for Plaintiff Livingston
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ 07095

THE KICK LAW FIRM                               JEFFREY BILS, ESQ.,
   Counsel for Plaintiff Livingston             TARAS KICK, ESQ.
815 Moraga Drive
Los Angeles, CA 90049

BAILEY, JOHNSON & PECK, P.C.                    CRYSTAL R. PECK, ESQ.,
   Counsel for Defendant Trustco Bank           JOHN W. BAILEY, ESQ.
5 Pine West Plaza, Suite 507
Albany, NY 12205

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this putative class action filed by Deborah J. Livingston and two other individuals (collectively, "Plaintiffs") against Trustco Bank ("Bank") and Does 1 through 100 (collectively, "Defendants"), is the Bank's motion to dismiss Plaintiffs' Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 46.) For the reasons set forth below, the Court grants in part and denies in part the Bank's motion.

## I.   RELEVANT BACKGROUND

### A.   Plaintiffs' Amended Complaint

Generally, in their Amended Complaint filed on April 26, 2021, Plaintiffs allege that the Bank violated the contractual agreements governing their accounts, as well as statutory law, when engaging in the following four practices: (1) failing to comply with Regulation E's Opt-In Rule by not fulfilling certain Regulation E prerequisites in its Overdraft Protection contract document (Dkt. No. 42, at ¶¶ 13-15); (2) assessing overdraft fees ("OD fees") on "Authorized Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions") (*id.* at ¶¶ 16-58); (3) assessing multiple $36 insufficient fund fees ("NSF fees") on electronic transactions or checks when they are reprocessed after being returned for insufficient funds (*id.* at ¶¶ 59-75); and (4) in late August 2020 to September 2020, mishandling the operation of the Bank's software system meant to be utilized by its customers for electronic transactions, which caused them to incur multiple NSF fees and/or OD fees (*id.* at ¶ 91).

Based on these factual allegations, Plaintiffs assert the following six claims: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment/restitution; (4) money had and received; (5) violation of the Electronic Fund

Transfers Act ("EFTA") (Regulation E); and (6) violation of New York General Business Law ("GBL") § 349. (Dkt. No. 42.)

  **B. Summary of Parties' Briefing on the Bank's Motion**

    **1. The Bank's Memorandum of Law**

  Generally, in support of its motion to dismiss, the Bank sets forth five arguments. (Dkt. No. 46-2.)

  First, the Bank argues that the Amended Complaint does not sufficiently state a claim for breach of contract. (*Id.* at 3-8.) More specifically, the Bank argues that Plaintiffs do not sufficiently allege that a breach of contract occurred based on the APPSN or ATM/one-time debit card transactions for three reasons: (1) the Amended Complaint is unclear whether Plaintiffs did not receive a Regulation E Opt-In contract or whether the Bank breached the terms of the Regulation E Opt-In contract, in which case the claim must fail because Plaintiffs never alleged that they entered into a Regulation E Opt-In contract (*id.* at 5); (2) Plaintiffs' checking account statements and overdraft fee notices confirm that the Bank did not charge OD fees on APPSN or ATM/one-time debit card transactions (*id.* at 5-11); and (3) even if the Bank assessed the OD fees, the Bank's account documents unambiguously state that it will assess OD fees depending on whether sufficient funds exist in the account when a transaction is settled or posted, thereby authorizing the challenged conduct (*id.* at 11-13). The Bank further argues that the relevant account documents unambiguously allow it to charge multiple NSF fees on the same re-presented item, and therefore Plaintiffs' allegations cannot constitute a breach of contract. (*Id.* at 13-18.) The Bank lastly argues that Plaintiffs' breach-of-contract claim regarding the mobile banking software upgrade in August 2020 to September 2020 must fail for three reasons: (1) the

Bank posted a notice of the software upgrade to its website and mobile banking site, as well as sent the notice to its customers by email, in compliance with the Online Banking General Disclaimer and Mobile Banking Disclaimer; (2) Plaintiffs do not allege that the Bank failed to meet its obligation to notify its customers of the software upgrade; and (3) Plaintiffs fail to identify any section of the account documents that the Bank breached due to the software upgrade. (*Id.* at 19.)

Second, the Bank argues that Plaintiffs fail to state a claim for breach of the implied covenant of good faith and fair dealing, because they do not allege facts independent of or separate from the breach-of-contract claim. (*Id.* at 20-21.) More specifically, the Bank argues that, because Plaintiffs do not plausibly suggest that the Bank complied with the literal terms of the Account Disclosure Notice but acted in a way to undermine the purpose of the contract so as to deprive Plaintiffs of a right under the agreement, they cannot state a separate cause of action for breach of the implied covenant of good faith and fair dealing. (*Id.* at 21.)

Third, the Bank argues that Plaintiffs fail to state a claim for unjust enrichment, restitution, and money had and received, because these claims are merely duplicative of their breach-of-contract claim. (*Id.* at 21-22.)

Fourth, the Bank argues that Plaintiffs fail to state a claim for violation of the EFTA (Regulation E), because they never allege that they opted into a Regulation E Opt-In contract. (*Id.* at 22.) The Bank also argues that the Regulation E claim is time barred, because it is subject to a one-year statute of limitations, which runs from the date of the occurrence of the first violation. (*Id.* at 22-23.)

Fifth, the Bank argues that Plaintiffs fail to state a claim for violation of New York GBL

§ 349, because the only connection to New York State is the Bank's headquarters there, which is insufficient to confer standing under New York GBL § 349. (*Id.* at 23-24.) The Bank further argues that the Court should dismiss Plaintiffs' § 349 claim because they failed to allege facts plausibly suggesting that the Bank denied them services for which they contracted. (*Id.* at 24.) Specifically, the Bank argues that Plaintiffs failed to allege that they contracted for services, such as overdraft fee protection, and that the Bank failed to provide those services. (*Id.*) The Bank argues that without these allegations, Plaintiffs have not sufficiently pled a § 349 claim. (*Id.*)

## 2.  Plaintiffs' Opposition Memorandum of Law

Generally, in opposition to the Bank's motion to dismiss, Plaintiffs set forth eleven arguments. (Dkt. No. 49-1.)

First, Plaintiffs argue that the Schedule of Service Charges (or "Fee Schedule"), which the Account Disclosure Notice identifies as the document listing all fees, bars multiple NSF fees on the same re-presented item. (*Id.* at 4-7.) Plaintiffs argue that the Account Disclosure Notice likewise permits only one fee on the same "item." (*Id.* at 4-5.) Plaintiffs argue that an "item" is the same "item" no matter how many times it is submitted or returned, which is the only meaning consistent with the Nacha Rules, the New York Uniform Commercial Code, and standard industry usage. (*Id.* at 5-6.) Plaintiffs argue that the Bank promised Plaintiffs that it would assess a single fee when they sought to make a single ACH payment or wrote a single check, even if the merchant attempted to collect those funds multiple times. (*Id.* at 6-7.) Plaintiffs argue that, at best, the Account Disclosure Notice is ambiguous and therefore the Court must deny the motion. (*Id.* at 7.)

Second, Plaintiffs argue that the Fee Schedule's use of the same language for an OD Fee and an NSF fee further supports Plaintiffs' interpretation of the contractual agreement as providing that the Bank may charge only one NSF fee per "item," no matter how many times the item is processed. (*Id.* at 7-8.) Plaintiffs argue that, in using identical "Per Item Fee" language to discuss both NSF fees and OD fees, the Bank reasonably promised that returned items and overdraft items are each subject to the same fee jeopardy—namely, each can incur a single bank fee. (*Id.*)

Third, Plaintiffs argue that more than forty courts across the country have rejected the Bank's position on the NSF fees. (*Id.* at 8-10.) Plaintiffs argue that, in the past eighteen months, fourteen federal courts, including six in the Second Circuit, have denied motions to dismiss that turn on identical fee practices. (*Id.*)

Fourth, Plaintiffs argue that other courts have already rejected the Bank's arguments regarding the relevant contractual language. (*Id.* at 10-14.) Plaintiffs argue that the Bank ignores the Fee Schedule, which contains the "per item fee" promise, and instead relies solely on an alleged provision in the Account Disclosure Notice that it claims "expressly" discloses that the Bank will assess a new NSF fee "each time" an item is processed. (*Id.* at 10-11.) Plaintiffs argue that the language on which the Bank relies is not a disclosure to assess multiple fees on the same item when it is repeatedly returned unpaid, but rather focuses on overdrafts. (*Id.* at 11.) Plaintiffs argue that only "paying" an item creates an overdraft, whereas returning an item unpaid does not, and that Plaintiffs complain only about the items that were not paid into overdraft (i.e., that were rejected unpaid). (*Id.*) Plaintiffs argue that, because an overdraft is not equivalent to a returned item—the focus of Plaintiffs' allegation regarding NSF fees—the sentence relied upon

6

by the Bank is irrelevant. (*Id.*) Plaintiffs argue that the Bank's reading of the "each time"

provision in the Account Disclosure Notice cannot be correct, because it would conflict with the

"per item" provision in the Fee Schedule. (*Id.* at 12.)

Fifth, Plaintiffs argue that the Bank's motion in relation to OD fees on APPSN

transactions is the Bank's attempt to file either a motion for summary judgment or a Fed. R. Civ.

P. 12(b)(1) motion. (*Id.* at 14-15.) Plaintiffs argue that, if the Court considers the Bank's motion

under Fed. R. Civ. P. 56 or 12(b)(1), the Court should permit Plaintiffs to take limited discovery

on any potential jurisdictional issue, before deciding that motion. (*Id.*)

Sixth, Plaintiffs argue that the overdraft promises in the account documents support

Plaintiffs' allegations regarding OD fees assessed on APPSN transactions. (*Id.* at 15-21.)

Specifically, Plaintiffs argue that, at the moment that the Bank authorizes a debit card

transaction, it places a "debit hold" on the account (i.e., it reduces the account's available

balance, places a hold on funds in the amount of the transaction, and therefore makes those funds

off-limits for other transactions). (*Id.* at 16.) Plaintiffs argue that a sentence-by-sentence analysis

of the "Available Balance" section of the Account Disclosure Notice confirms that it bars OD

fees on the APPSN transactions, because the provision states that (1) the "available balance" is

the balance used to determine overdrafts," (2) the funds are immediately placed on "hold" and

removed from the available balance for debit card transactions, (3) the "hold" endures for three

days and expires at the end of three days only if a transaction has not yet settled, and (4) before

the end of the three-day window, the "hold" remains in place "from the time of the authorization

to the time the match authorization transaction is paid from [the] account." (*Id.* at 17-18.)

Plaintiffs argue that the only possible conclusion from this language is that for debit card

transactions that *do* settle before three days—like those Plaintiffs identified in the Amended Complaint—the holds have *not* expired and stand ready to be applied to the debit card transaction for which they were initially held. (*Id.* at 18.) Plaintiffs argue that the Bank's promises to hold funds for debit card transactions at the moment of authorization must be given effect, meaning there cannot be an OD fee on an APPSN transaction without violating the account documents. (*Id.* at 18-19.) Plaintiffs also argue that the account documents bar OD fees on APPSN transactions because the Bank repeatedly promises that it determines overdrafts when it decides to "authorize and pay" debit card transactions, which is a promise to accountholders that "authorization" is coterminous with "payment" and is the key moment when the Bank determines overdraft fees on debit cards, rather than at the time of settlement. (*Id.* at 19-21.)

Seventh, Plaintiffs argue that their claim for breach of the covenant of good faith and fair dealing is not precluded for two reasons: (1) under New York law, a defendant who complies with the literal terms of the parties' contract may nevertheless be liable for breaching its implicit duties if it acts in a way that undermines the purpose of the contract; and (2) courts have consistently held that analogous allegations sufficiently state claims for breach of the implied covenant. (*Id.* at 21-22.)

Eighth, Plaintiffs argue that the Bank's contentions regarding the August 2020 to September 2020 mobile banking software upgrade are based entirely on disputed material facts not appropriately before the Court on a Fed. R. Civ. P. 12(b)(6) motion. (*Id.* at 22.) Plaintiffs also argue that the Bank does not deny that the software upgrade made customers unable to access their accounts, but rather improperly relies on a notice to customers that lacks proper foundation or authentication. (*Id.* at 22-23.) Plaintiffs argue that, even if the Court considered the

notice, the notice does not support the Bank's position, and a triable issue of material fact exists regarding whether the Bank mishandled the operation of its software system during the upgrade. (*Id.* at 23.)

Ninth, Plaintiffs argue that they sufficiently pled a violation of the common-law counts, because Fed. R. Civ. P. 8(d) permits Plaintiffs to plead alternative and even inconsistent legal theories, such as breach of contract and unjust enrichment, even if Plaintiffs can only recover under one of these theories. (*Id.* at 23-24.)

Tenth, Plaintiffs argue that the Bank neglected to inform the Court of contrary authority regarding its arguments against Plaintiffs' New York GBL § 349 claim and that the contrary authority states that the Second Circuit "leaves open the possibility of 'out-of-state plaintiffs' claims of deceptive acts' where they lead 'to transactions within that state,' depending upon 'the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction . . . ." (*Id.* at 24 [quoting *Voronina v. Scores Holding Co.*, 16-CV-2477, 2017 WL 74731 (S.D.N.Y. Jan. 5, 2017)]). Finally, Plaintiffs argue that the Court should reject the Bank's argument that Plaintiffs failed to allege that the Bank denied them services for which they contracted because Plaintiffs did allege the requisite facts in the Amended Complaint. (*Id.* at 25.)

Eleventh, Plaintiffs request leave to amend their Amended Complaint if the Court determines it should grant the Bank's motion. (*Id.*)

### 3.    The Bank's Reply Memorandum of Law

Generally, in reply to Plaintiffs' opposition, the Bank sets forth seven arguments. (Dkt. No. 54.)

First, the Bank argues that the Court may review and rely upon the following documents when deciding its motion to dismiss: Plaintiffs' account statements and notices of insufficient funds; the Account Disclosure Notice; the Overdraft Fee Disclosure and Schedule of Service Charges; the Online Banking Disclosure; the Mobile Banking Disclaimer; the Notice of Online Banking and Mobile App Upgrade; and the Nacha Rules. (*Id.* at 1-4.) The Bank argues that Plaintiffs attached these documents to the Amended Complaint as an exhibit, the Amended Complaint incorporated them by reference, and that the documents were integral in drafting the Amended Complaint. (*Id.*)

Second, the Bank argues that Plaintiffs' Amended Complaint is speculative and meant to evade the Court's gatekeeping function so that Plaintiffs may embark on a broad fishing expedition to support a class action. (*Id.* at 5-6.) The Bank argues that Plaintiffs' counsel's suggestion, prior to commencing suit, that they would not file the lawsuit if the Bank produced a 30-day sample of transactions for their experts to review further supports the Bank's assertion that Plaintiffs' claims are mere speculation in order to form a class action. (*Id.*)

Third, the Bank argues that Plaintiffs' interpretation of the Fee Schedule only permitting one fee on the same insufficient funds item is illogical when read in conjunction with the entire agreement. (*Id.* at 6-7.) The Bank argues that it has no discretion whether it can refuse to accept a request for payment that complies with the Nacha Rules, and adds that the Account Disclosure Notice states that the Bank "will charge you a fee for each insufficient funds item whether we pay, permit, return, decline, or reject the item" and "each time we pay or return as unpaid an overdraft." (*Id.*) The Bank argues that the Account Disclosure Notice, Online Banking Disclosure, and Schedule of Fees, if properly read in conjunction with one another, show that the

Bank may charge multiple NSF fees for the same transaction. (*Id.* at 7.)

Fourth, the Bank argues that Plaintiffs' lawsuit is devoid of facts and asks the Court to reject this "assembly line style of litigation." (*Id.* at 7-8.) The Bank argues that the Court should not rely on the extraneous contracts used by other banking institutions that Plaintiffs cite in their Amended Complaint. (*Id.* at 8.)

Fifth, the Bank argues that the Court may treat this motion as one for summary judgment, under Fed. R. Civ. P. 12(d) and 56. (*Id.* at 8-9.)

Sixth, the Bank argues that the Court should dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing because Plaintiffs' factual allegations do not plausibly suggest that the Bank complied with the literal terms of the contract but acted in a way to undermine the purpose of the contract. (*Id.* at 9.)

Seventh, the Bank argues that Plaintiffs' New York GBL § 349 claim must fail, because Plaintiffs' Amended Complaint does not allege that they actually read the account documents, nor does it allege that they relied on certain representations in those documents (*Id.* at 9-10.) The Bank argues that, because Plaintiffs failed to allege facts to suggest that they relied upon representations made by the Bank, there is no causation for their GBL § 349 claim. (*Id.* at 10.)

## II.    RELEVANT PROCEDURAL LEGAL STANDARDS

### A.    Legal Standard Governing a Motion to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d

204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n. 20 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-514 (2002)). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 212, n.17 (emphasis added).[1]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Id.* at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit

---

[1]      *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading

standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  "As

a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has

failed to meet this liberal notice pleading standard."  *Rusyniak,* 629 F.Supp.2d at 214; *Ashcroft v.

Iqbal*, 556 U.S. 662, 677-83, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an

appellate decision holding that a complaint had stated an actionable antitrust claim under 15

U.S.C. § 1.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).  In doing so, the

Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957), that "a complaint should not be dismissed for failure to state a claim unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69.  Rather than turn on the *conceivability* of

an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an

actionable claim.  *Id*. at 1965-74.  The Court explained that, while this does not mean that a

pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the

pleading must contain at least "some factual allegation[s]."  *Id*. at 1965.  More specifically, the

"[f]actual allegations must be enough to raise a right to relief above the speculative level [to a

plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at

1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the

pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks and citations

omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a

defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*,

550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to

relief, "the tenet that a court must accept as true all of the allegations contained in the complaint

is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement"

will not suffice.  *Id.* (internal citations and alterations omitted).  Rule 8 "demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a

dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal

pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the

four corners of the complaint may be considered without triggering the standard governing a

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer,

(2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

14

any matter of which the court can take judicial notice for the factual background of the case.[11]

### B.    Legal Standards Governing a Motion to Amend a Pleading

A motion for leave to amend a complaint is governed by Fed. R. Civ. P. 15, which states

that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2);

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir.

1992). Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint should be freely given

"[i]n the absence of any apparent or declared reason to not grant leave to amend[,] such as undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, [or] futility of the amendment . . . ." *Foman*, 371 U.S. at 182; *S.S.*

*Silberblatt, Inc. v. E. Harlem Pilot Block-Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir. 1979); *Meyer v.*

*First Franklin Loan Servs., Inc.*, 08-CV-1332, 2010 WL 277090, at *1 (N.D.N.Y. Jan. 19, 2010)

---

[11]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .  However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

(Suddaby, J.); *Jones v. McMahon,* 98-CV-0374, 2007 WL 2027910, at *10 (N.D.N.Y. July 11, 2007) (Lowe, M.J.). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss . . . ." *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 333 (E.D.N.Y. 2013) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).

## III.   ANALYSIS

### A.   Whether the Court May Dismiss Plaintiffs' Claim for Breach of Contract

After carefully considering the matter, the Court answers the question in the negative to the extent the claim is based on Plaintiffs' allegations regarding OD fees on APPSN transactions and the assessment of multiple NSF fees on the same re-presented payment, but in the affirmative to the extent the claim is based on Plaintiffs' allegations regarding the improper software upgrade in August 2020 to September 2020.

Under New York law, to survive a motion to dismiss a breach-of-contract claim, Plaintiffs' Amended Complaint must allege facts that plausibly suggest "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Habitzreuther v. Cornell Univ.*, 14-CV-1229, 2015 WL 5023719, at *5 (N.D.N.Y. Aug. 2015) (Sharpe, J.). "New York law follows the common law rule that in interpreting a contract, the intent of the parties governs, and therefore, a contract should be construed so as to give full meaning and effect to all of its provisions." *PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1199 (2d Cir. 1996) (citation and internal quotation marks omitted). "Under New York law[,] the initial interpretation of a contract is a matter of law for the court to decide" and "[i]ncluded in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous." *Alexander & Alexander Servs., Inc. v. These certain*

*Underwriters at Lloyd's, London, England*, 136 F.3d 82, 86 (2d Cir. 1998) (internal quotation marks and citation omitted).

"Ambiguity does not exist when contract language has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Richard v. Glens Falls Nat'l Bank*, 20-CV-0734, 2021 WL 810218, at *7 (N.D.N.Y. Mar. 3, 2021) (Sannes, J.) (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989)). "Conversely, [a] contract is ambiguous when it is reasonably susceptible of more than one interpretation." *Richard*, 2021 WL 810218, at *7 (internal quotation marks omitted). Courts may dismiss breach-of-contract claims on a Rule 12(b)(6) motion to dismiss where the language is "clear and unambiguous"; however, "a plaintiff's claim should not be dismissed if she 'has an arguable claim under the contract.'" *Id.* (quoting *Hermant Patel M.D., P.C. v. Bandikatla*, 18-CV-10227, 2019 WL 6619344, at *2 (S.D.N.Y. Dec. 5, 2019)).

In their Amended Complaint, Plaintiffs allege the Bank breached the relevant account documents when engaging in the following three practices: (1) assessing OD fees on APPSN transactions (Dkt. No. 42, at ¶¶ 16-58); (2) assessing multiple NSF fees on the same electronic transactions or checks when reprocessed again after initially being returned for insufficient funds (*id.* at ¶¶ 59-75); and (3) mishandling a software upgrade to mobile banking in August 2020 to September 2020, which caused consumers to incur multiple NSF fees and/or OD fees (*id.* at ¶ 91).

### 1. Overdraft Fees on APPSN Transactions

With respect to Plaintiffs' allegations regarding OD fees on APPSN transactions, the Bank

argues that Plaintiffs failed to sufficiently allege a breach of contract for two reasons: (1) Plaintiffs' checking account statements and overdraft fee notices show that the OD fees Plaintiffs cite in their Amended Complaint were not the result of a one-time debit card transaction or APPSN transaction; and (2) the Bank's account documents unambiguously show that Trustco will assess OD fees based on whether sufficient funds exist in the account when a transaction is settled or posted.[2] (Dkt. No. 46-2, at 5-13.)

Because the Bank's first argument requires review of Plaintiffs' account statements and overdraft fee notices, (*see* Dkt. No. 46-2, at 6-11), the Court must preliminarily determine whether reliance upon these documents is proper when deciding a motion under Fed. R. Civ. P. 12(b)(6). The Court finds that these documents, although not attached as exhibits to the Amended Complaint or incorporated by reference in it, are nonetheless integral to the Amended Complaint and may be considered when the Court is deciding the Bank's motion to dismiss. "For purposes of a motion to dismiss, [the Second Circuit] [has] deemed a complaint to include . . . documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000). In their Amended

---

[2]       The Bank additionally argues that Plaintiffs' breach-of-contract claim must fail because the Amended Complaint is unclear as to whether Plaintiffs allege that they did not receive a Regulation E Opt-In contract or that the Bank breached the terms of the Regulation E Opt-In contract.  (Dkt. No. 46-2, at 5.) The Court addresses arguments related to the Regulation E claim in a separate section of this Decision and Order but notes that Plaintiffs' breach-of-contract claim regarding OD fees on APPSN transactions also includes references to the Account Disclosure Notice—an agreement into which Plaintiffs affirmatively entered. (Dkt. No. 42, ¶¶ 106-107 ["Plaintiffs and each of the Class Members entered into an Account Agreement with Defendant covering the subject of overdraft transactions."; "Nowhere did the Account Agreement state that Defendant would sequester money upon authorization for a transaction and now allow it to be used for anything else, but then charge an overdraft fee at the time of the posting of the same transaction when there had been enough money to cover the transaction when the money had been sequestered for it."].)

Complaint, Plaintiffs identified specific dates and charges that they allege constituted improper OD fees on APPSN transactions in violation of the account documents. (Dkt. No. 42, at ¶¶ 56-58.) Plaintiffs would not have been able to identify these OD fees without reference to the account statements and overdraft fee notices, making them integral to the Amended Complaint.[3]

Even after reviewing the account statements and overdraft fee notices, however, the Court is not inclined to dismiss Plaintiffs' breach-of-contract claim with respect to OD fees on APPSN transactions based on the Bank's first argument. The Court cannot discern, from the account statements and overdraft fee notices alone, the verity of the Bank's contention that the OD fees are not the result of one-time debit card or APPSN transactions.[4] Rather, the Court must rely on the Bank's counsel's representations[5] regarding how to interpret each of the account statements

---

[3]    In Plaintiffs' original response to the Bank's motion to dismiss, Plaintiffs included a document titled "Objections to Attorney Declaration, Reliance Upon Unauthenticated and Inadmissible Exhibits, and Opinion Testimony Offered by Defendant's Attorneys-Lay Witnesses" as an exhibit. (Dkt. No. 47-1.) In that exhibit, Plaintiffs challenged, among other things, each extraneous document upon which the Bank relied in its motion. (*Id.*) However, in filing its corrected response, which supersedes the original response, Plaintiffs did not include this document and only generally objected to the Bank's argument regarding OD fees on APPSN transactions as an improper attempt to convert its motion to dismiss into a motion for summary judgment. (Dkt. No. 49-1, at 14-15.) Based on these facts, the Court finds that "no dispute exists regarding the authenticity or accuracy" of these documents, *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010), and that the Court's review of the documents does not convert the motion into one for summary judgment. *See Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint, the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

[4]    For example, in reviewing the account statements and overdraft fee notices, the Court cannot definitively determine whether the charges on Plaintiff Livingston's account on October 2, 2018, *see* Dkt. No. 46-10, at 2, and on Plaintiff Dena Scroggins's account on October 30, 2019, *see* Dkt. No. 46-16, at 2-3, "are not charge[s] [for] an overdraft fee for debit card transactions." (Dkt. No. 46-2, at 8-9.)

[5]    The Bank did not submit a declaration or affidavit from an account custodian or other Bank representative explaining how to interpret the account statements or overdraft fee notices. Rather, the Bank's counsel (who does not appear to have been involved in the transaction)

on fact-intensive issues, including when the Bank posted the disputed fees and on what type of transaction the Bank assessed that fee. The Court declines to engage in this fact-intensive inquiry, especially when the inquiry is based solely on the Bank's counsel's representations, in deciding a motion to dismiss.[6] Therefore, the Court will not dismiss Plaintiffs' breach-of-contract claim related to OD fees on APPSN transactions on this ground.

In the alternative, the Bank argues that its account documents unambiguously provide that it will assess OD fees based on whether sufficient funds exist in the account when a transaction is *settled* or *posted*, and therefore that assessment of the disputed OD fees did not violate the account documents. (Dkt. No. 46-2, at 11.) As support, the Bank points to the following language in the Account Disclosure Notice:

> AVAILABLE BALANCE – Your available balance is the most current record the bank has of the amount you are able to withdraw from your account. This does not reflect any checks or ACHs you have authorized or other items that have not been paid from your account. *Please know that it is possible to overdraw your account even though the available balance shows sufficient funds.* For all debit card purchases, we are permitted to place a temporary hold against some or all of the funds in the account. This hold on your account will be subtracted from your available balance. We are permitted to place this hold on your account for up to three business days from the time of the authorization to the time the matched authorization transaction is paid from your account. If the transaction is not submitted within the 3 days, we will release the hold and your available balance will increase. *Once the transaction*

---

attempts to explain these issues, on his own, within the motion to dismiss. (Dkt. No. 46-2, at 6-10.)

[6]     *See Nourse v. Cty. of Jefferson*, 17-CV-0807, 2018 WL 2185504, at *2, n. 1 (N.D.N.Y. May 11, 2018) (Sannes, J.) ("Given the fact-sensitive nature of Plaintiff[s'] claim, and since discovery has not yet commenced, the Court declines to convert Defendant's motion to one for summary judgment."); *Madu, Edozie & Madu, P.C. v. Socketworks Ltd. Nigeria*, 265 F.R.D. 106, 124 (S.D.N.Y. 2010) ("The court also declines to convert the instant motion into a motion for summary judgment since discovery has not yet commenced.").

> *is submitted properly by the merchant, it will be posted to your account . . . .*

(*Id.* [emphasis in original]; Dkt. No. 46-3, at 3.)[7] The Bank argues that this language identifies the possibility of overdrawing the account, even with sufficient funds, and that it distinguishes between the time when a transaction is authorized and the time that it "is paid" and "posted" to the customer's account. (Dkt. No. 46-2, at 11-12.)  The Bank argues that the language also clearly indicates that, for transactions taking more than three days to settle, the Bank will release the funds back into the account—something Plaintiffs should have monitored to avoid the risk of spending the funds before the transaction settled. (*Id.*)

Plaintiffs highlight, however, that a sentence-by-sentence analysis of this portion of the Account Disclosure Notice shows that, for debit card transactions that *do* settle before three days—which Plaintiffs allege occurred here—the holds have *not* expired, the funds are ready to be applied to the debit card transaction for which they were initially held, and there accordingly is no need for an OD fee. (Dkt. No. 49-1, at 18; Dkt. No. 42, at ¶¶ 56-58.)[8] Plaintiffs cite the Overdraft Disclosure[9] as support for their position that authorization is the key moment when the

---

7       The Court may consider the Account Disclosure Notice and Overdraft Disclosure when deciding the motion to dismiss because Plaintiff referenced them as Exhibits to the Amended Complaint and incorporated them by reference in the Amended Complaint. (Dkt. No. 42, at ¶ 34.) Plaintiffs also attached these documents to the motion to amend their Complaint. (Dkt. Nos. 36-4, 36-5, 36-6.)

8       *See Hash v. First Fin. Bancorp*, 20-CV-1321, 2021 WL 859736, at *4 (S.D. Ind. Mar. 8, 2021) ("[Plaintiff] argues that, while the section warns that a certain type of APPSN transaction can incur an overdraft fee, it does so only in the limited circumstance of when the hold expires before the transaction settles. That isn't the only way an APPSN transaction can occur, and that wasn't the type of APPSN transaction [Plaintiff] experienced. The hold on [Plaintiff's] positively authorized transactions never expired but were nevertheless charged with an overdraft fee when they settled.").

9       In a motion to dismiss filed on June 22, 2021, in the member case, *Lamoureux v. Trustco Bank, et al.*, the parties identify for the first time that the Overdraft Disclosure referenced as

Bank determines OD fees, because the Overdraft Disclosure shows the Bank uses "authorize" and "payment" coterminously. (Dkt. No. 49-1, at 19 ["We do not *authorize and pay* overdrafts for the following types of transactions unless you ask us to: ATM transactions; everyday debit card transactions."] [emphasis added].) The Court also notes that the Account Disclosure Notice, which neither party refutes applies to Plaintiffs' accounts, includes similar language in its "ATM/DEBIT CARD" section. (Dkt. No. 46-3, at 5 ["ATM transactions and everyday debit card transactions will be declined and will not be considered insufficient funds items unless you ask us to *authorize and pay* these types of overdrafts."] [emphasis added].)

Like other courts addressing similar arguments, the Court finds that the language in the relevant account documents is ambiguous, because both parties' interpretations of the disputed language is reasonable. *See Kelly v. Cmty. Bank, N.A.*, 19-CV-0919, 2020 WL 777463, at *6 (N.D.N.Y. Feb. 18, 2020) (D'Agostino, J.) ("Because this material term is subject to more than one reasonable interpretation, it is ambiguous."). The Court recognizes that the Account Disclosure Notice includes language regarding the possibility of overdrafting the account, even if the available balance shows sufficient funds. However, based on the provision as a whole, it is reasonable for Plaintiffs to assume that, if the debit hold is placed on funds *at the time of authorization* and settled within three days (i.e., when the funds have not yet been re-released into the account), there is no need for an OD fee. (Dkt. No. 42, at ¶¶ 17-21, 56-58, 107). *See Varga v. Am. Airlines Fed. Cred. Union*, 20-CV-4380, 2020 WL 8881747, at *4 (C.D. Cal. Dec. 1, 2020) ("While it is clear that a consumer must have funds to 'pay any withdrawal order,' a consumer could still think there was a sufficient amount in the account if there were positive

---

"Exhibit C" to the Amended Complaint is the Opt-In Contract addressed in various portions of Plaintiffs' Amended Complaint and the briefing on the Bank's motion in this lawsuit. *Lamoureux v. Trustco Bank, et al.,* 21-CV-0336 [Dkt. No. 17-8, at 13; Dkt. No. 22, at 10].)

funds when [the bank] placed a preauthorization hold on the funds – as that seems to be the very purpose of the hold.").[10]

Likewise, the Account Disclosure Notice's coterminous use of "authorize and pay," which is also found in the Overdraft Disclosure, obfuscates the distinction the Bank attempts to make between "authorization" and "payment" when arguing that OD fees are assessed based on when the transaction is "settled" or "posted." This interpretation is supported by the fact that "a reasonable consumer likely considers something to have been paid for when they swipe their debit card, not when their bank's back-office operations are completed." *Roberts v. Capital One*, *N.A.*, 719 F. App'x 33, 36 (2d Cir. 2017) (summary order).[11]

Because the Court may not grant a motion to dismiss on a breach-of-contract claim when the contract is not "clear and unambiguous," *Richard*, 2021 WL 810218, at *7, the Court will not

---

[10]     (*See also* Dkt. No. 50-16, at 6-7 ["This language expressly promises that Scott will place holds on the funds at the time of the authorization of the debit card transaction, which is when Plaintiff paid the merchant, and that these holds reduce Plaintiff's available balance. Plaintiff asserts that these funds must be used to settle the transaction for which they were held, and that these funds cannot be used for other, subsequent transactions. The Court finds that this is a reasonable interpretation of the Contract, especially considering the Federal Reserve Board has stated that the entire point of the hold is to ensure that the funds remain available to settle the transaction."] [quoting *Darty v. Scott Credit Union*, No. 19-L-0793 (Cir. Ct. Ill., St. Clair Cnty. June 24, 2020)].)

[11]     *See also Kelly*, 2020 WL 777463, at *6 (finding that language stating that the bank "may, at its discretion, *authorize and pay* certain overdraft items when [the customer] do[es] not have sufficient available funds" was ambiguous, as it was "equally reasonable" to interpret this language as meaning overdraft fees were assessed at the time the bank elected to make the payment or at the time of settlement of the transaction); *Hash*, 2021 WL 859736, at *5 (holding that "terms link[ing] authorization with paying overdrafts"  do not "help the customer understand whether overdrafts are determined at the time of authorization or settlement"). (Dkt. No. 50-16, at 10 ["The Court finds that Defendant's use of language linking authorization to payment can be reasonably interpreted to mean that transactions are paid, and therefore overdrafts are determined, at authorization because a reasonable consumer likely considers something to have been paid for when they swipe their debit card, not when their bank's back-office operations are completed."].)

dismiss Plaintiffs' breach-of-contract claim related to the OD fees on APPSN transactions.

### 2. Multiple NSF Fees on Same Re-Presented Payment

The Bank also seeks dismissal of Plaintiffs' breach-of-contract claim regarding multiple

NSF fees on re-presented payments, because the Bank claims that the relevant account

documents unambiguously permit this conduct. (Dkt. No. 46-2, at 13-18.) As the bases for its

contention that it may charge multiple NSF fees on a re-presented payment, the Bank cites the

following language from the Account Disclosure Notice and Retail Online Banking

Agreement:[12]

> *Trustco Bank Retail Online Banking, Bill Paying, and Mobile*
> *Banking Agreement and Electronic Fund Transfers Disclosure*
> *Agreement:*
>
> 29. Compliance. You and we agree to comply with (i) the Account
> Rules, and (ii) all applicable laws, regulations, rules and orders,
> including without limitation all applicable National Automated
> Clearing House Association ('Nacha') rules, regulations, and
> policies, the Uniform Commercial Code ('UCC'), the U.S.
> Department of the Treasury's Office of Foreign Asset Control
> ('OFAC') requirements, and all applicable laws, regulations, and
> orders administered by the U.S. Department of the Treasury's
> Financial Crimes Enforcement Network ('FinCEN').
>
> *Account Disclosure Notice:*
>
> Overdrafts: 'We will charge a fee *each time* we pay or return as
> unpaid an overdraft.'
>
> ATM/Debit Card: 'We will consider checks, other transactions
> made using your checking account number, or automatic bill
> payments to be insufficient funds items if the available funds are
> not sufficient to cover the amount of the transaction. Insufficient
> funds items include all orders and instructions for the payment,

---

[12]    The Retail Online Banking Agreement incorporates by reference the Account Disclosure
Notice. (Dkt. 46-6, at ¶ 1.)

> transfer, or withdraw of funds from your account. . . . [W]e will
> charge you a fee for each insufficient funds item whether we pay,
> permit, return, decline or reject the item . . . .

(*Id.* at 14 [emphasis in original].) Along with these portions of the Account Disclosure Notice and Retail Online Banking Agreement, the Bank references the Nacha Rules, which it states require it to accept re-presented payments and treat returned payments as new "entries." (*Id.* at 14-17.) The Bank argues that the Nacha Rules, read in conjunction with the Account Disclosure Notice, state that insufficient funds items include *all* orders and instructions for payment, and that, in *each* instance of an unpaid return, there will be an overdraft charge. (*Id.* at 17.)

Plaintiffs, however, cite the following excerpt from the Schedule of Service Charges (or "Fee Schedule")[13] as support for their contention that the Bank may only charge one NSF fee, on a "per item" basis, rather than each time an item is presented (as the Bank argues):

| Additional Account Fees | Per Item Fee |
| --- | --- |
| Overdraft/Insufficient Fee - Personal Accounts* (Paid or returned) (No more than 5 fees per day) | $36 |

(Dkt. No. 49-1, at 4.)[14] Plaintiffs also cite the last line of the above-excerpted portion of the

---

[13]     The first page of the Account Disclosure Notice reads, as follows: "FEES – All fees are listed on the Schedule of Service Charges which is given to you with this disclosure." (Dkt. No. 46-3, at 3.)

[14]     Plaintiffs additionally argue that the Bank's use of the same language in the Fee Schedule for an "overdraft fee" as an "NSF fee" supports Plaintiffs' interpretation of NSF fees being charged once "per item." (Dkt. No. 49-1, at 7-8 ["In using identical language to discuss both NSF fees and OD fees, [the Bank] reasonably promises that *returned* items and *overdraft* items are each subject to the same fee jeopardy—namely, each can incur a single bank fee."] [emphasis added in the original].)

25

Account Disclosure Notice as support for a "per item" charge: "Insufficient funds items include all orders and instructions for the payment, transfer, or withdraw of funds from your account . . . . [W]e will charge you a *fee for each insufficient funds item* whether we pay, permit, return, decline or reject the item . . . ." (*Id.* at 4-5 [emphasis added].) Plaintiffs argue that an "item" is the same "item," whether it has been returned unpaid one time or multiple times, and that the Bank's interpretation of the Account Disclosure Notice conflicts with the language in the Fee Schedule. (*Id.* at 5, 11-12.)

The Court finds both interpretations reasonable, making the contract ambiguous and thus the claim arising from it is not subject to dismissal. *Richard*, 2021 WL 810218, at *7. As Plaintiffs cite in their response, multiple courts, including those within the Second Circuit, have found the term "item" to be ambiguous within this context. (Dkt. No. 49-1, at 8-10.) For example, when addressing similar arguments regarding charging NSF fees on the same item, the Eastern District of New York found a material ambiguity that precluded dismissal of the claim:

> At bottom, Plaintiff's Complaint presents an issue of contractual interpretation—namely, whether the Account Agreements authorize Capital One to assess multiple "overdraft" and/or "non-sufficient funds" fees on transactions that the bank re-processes one or more times after issuing a return for insufficient funds. According to Capital One, the Account Agreements permit it to "charge a fee for *each item* returned in accordance with [its fee schedule]," and each request for payment constitutes a discrete 'item' subject to such fees—even where a request is simply being re-processed. Plaintiff, for his part, contends that "common sense and . . . industry usage of the term 'item'" dictate that an "'item' cannot become a new 'item' when Capital One returns and reprocesses it one or more times."
>
> Here, "[b]oth parties have offered reasonable interpretations" of

26

> the Account Agreements, . . . , and a "claim predicated on a
> materially ambiguous contract term is not dismissible on the
> pleadings."

*McNeil v. Capital One Bank, N.A.*, 19-CV-0473, 2020 WL 5802363, at *2 (E.D.N.Y. Sept. 29,

2020) (internal citations omitted).

The court in *Richard v. Glens Falls National Bank* likewise found the term "item" to be

materially ambiguous:

> The Court finds that the Account Agreement is facially ambiguous.
> While the Fee Schedule provides for a $32 NSF Fee "per item,"
> the Account Agreement does not define the term "item." There is
> no provision making clear that a separate NSF fee may be charged
> for each presentment of the same transaction. The specific
> provisions Defendant relies on could reasonably be read as either
> authorizing Defendant to charge a single NSF fee for *each check,
> debit or other transaction* that is presented for payment, regardless
> of how many times a merchant unsuccessfully attempts to present
> the transaction (as Plaintiff urges), or as authorizing Defendant to
> charge an NSF fee *each time* a transaction is presented and
> returned for nonpayment (as Defendant urges).

*Richard*, 2021 WL 810218, at *11; *Petrey v. Visions Fed. Credit Union*, 20-CV-1147, 2021 WL

2364971, at *5 (N.D.N.Y. June 9, 2021) (D'Agostino, J.) ("Much like the courts in *Perks, Roy,*

*McNeil, Chambers,* and *Coleman*, the Court here finds that the definition [of] 'item' and when

items are 'presented' is ambiguous. It is unclear whether resubmission of an ACH transaction is

part of the same initial ACH transaction or a separate transaction altogether."); *Chambers v.*

*HSBC Bank USA, N.A.*, 19-CV-10436, 2020 WL 7261155, at *4 (S.D.N.Y. Dec. 10, 2020)

("Moreover, Defendant's argument that the Disclosures are unambiguous because they authorize

an NSF fee for '*each* . . . item' that overdraws an account is unpersuasive, because the ambiguity

27

here pertains to what qualifies as an 'item' to begin with, not whether NSF fees may be incurred for 'each' of them.").

Because the parties' competing interpretations of the account documents are reasonable, Plaintiffs' breach-of-contract claim regarding the Bank charging multiple NSF fees on the same item is sufficient to withstand the Bank's motion to dismiss. *Petrey*, 2021 WL 2364971, at *5.

### 3. Mobile Banking Software System Upgrade

The Bank's motion additionally requests that the Court dismiss any breach-of-contract claim based on Plaintiffs' allegations regarding the mobile banking software system upgrade in August 2020 and September 2020. (Dkt. No. 46-2, at 18-19.) Although the parties disagree as to whether the Court may review the Online Banking General Disclaimer and the Notice the Bank allegedly sent customers regarding the software upgrade, the Court need not decide this issue, because Plaintiffs have failed to allege facts plausibly suggesting which portion of the contract the Bank purportedly breached. (Dkt. No. 42, at ¶ 91.)

"'New York law and the *Twombly-Iqbal* standard of federal pleading require a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached. Otherwise, the complaint must be dismissed.'" *Wallert v. Atlan*, 141 F. Supp. 3d 258, 286 (S.D.N.Y. Oct. 26, 2015) (quoting *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015)); *Noakes v. Syracuse Univ.*, 369 F.Supp.3d 397, 418 (N.D.N.Y. Feb. 26, 2019) (McAvoy, J.) ("To state a valid claim for breach of contract, a plaintiff must state when and how the defendant breached *the specific contractual promise*."); *Ally Fin. Inc. v. Comfort Auto Grp. NY LLC*, 20-CV-1281, 2021 WL 4033249, at *5 (E.D.N.Y. Sept. 3, 2021) (collecting cases supporting the proposition that a party fails to allege a breach-of-contract claim where it "fails to

28

identify any particular provision of the Agreements breached" by the other party). "Merely attaching a contract [to the complaint] does not allege a breach of its terms—the complaint must identify the contractual obligation that was breached and allege how." *Wallert*, 141 F. Supp. 3d at 286.

The Amended Complaint states, as follows, with respect to the alleged software upgrade in August 2020 to September 2020:

> Further, in or about late August 2020 to September 2020, Trustco breached and mishandled the operation of its software system meant to be utilized by its bank customers for electronic transactions, such that the customers were unable to electronically access their own accounts to cancel or reschedule or otherwise arrange or rearrange payments. Thereby Trustco caused multiple additional non-sufficient funds or overdraft fees to be imposed on its customers. When Trustco's employees were asked why this access to the customer's accounts was not functioning, Trustco responded it was in the midst of some sort of software transition or change and that this was happening across its system to Trustco customers.

(Dkt. No. 42, ¶ 91.)

Nowhere in the Amended Complaint do Plaintiffs reference which account document or, specifically, which portion of these documents the Bank allegedly breached in performing the mobile banking system upgrade.[15] Based on this failure, the Court dismisses Plaintiffs' breach-of-contract claim to the extent Plaintiffs rely on their allegations regarding the mobile banking software upgrade in August 2020 to September 2020.

A. Whether the Court Should Dismiss Plaintiffs' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

---

[15]  This allegation is different than Plaintiffs' allegations regarding OD fees on APPSN transactions and charging multiple NSF fees on the same re-presented payment, where Plaintiffs cited specific portions of the account documents that they claimed the Bank breached. (Dkt. No. 42, ¶¶ 36-37, 72.)

29

After carefully considering the matter, the Court answers the question in the affirmative for the reasons stated in the Bank's memoranda of law. (Dkt. Nos. 46-2, 54.) To those reasons, the Court adds the following analysis.

The Bank argues that the Court should dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing because it is redundant of their breach-of-contract claims (i.e., Plaintiffs do not allege any other facts that are independent of or separate from the breach-of-contract claim). (Dkt. No. 46-2, at 20-21.) Plaintiffs do not dispute that the Amended Complaint does not contain facts independent of or separate from the breach-of-contract claim, but argue that under New York law, a defendant who has "complied with the literal terms of the [parties'] contract" may nevertheless be liable for breaching its implicit duties if it so acts "in a way that undermines the purpose of the contract." (Dkt. No. 49-1, at 21-22 [quoting *Benex LC v. First Data Merch. Servs. Corp.*, 14-CV-6393, 2016 WL 1069657, at *3 (E.D.N.Y. Mar. 16, 2016)].)

Plaintiffs' argument is unpersuasive. "'New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.'" *Habitzreuther*, 2015 WL 5023719, at *6 (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002)); *Maltbie's Garage Co., Inc. v. Gen. Motors, Inc.*, 21-CV-0581, 2021 WL 4972738, at *8 (N.D.N.Y. Oct. 26, 2021) (D'Agostino, J.) (citing *Cruz v. FX DirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013)). Many courts assessing cases with similar fact patterns, including most of the cases on which Plaintiffs rely to support their breach-of-contract claim, dismiss claims for breach of the implied covenant of good faith and fair dealing where the plaintiff does not allege

facts independent of or separate from those supporting the breach-of-contract claim. *See, e.g.,*

*Richard*, 2021 WL 810218, at *14-15 ("[M]ost courts in this Circuit have, consistent with New

York law, dismissed implied covenant claims as duplicative in similar circumstances."); *Lussoro*

*v. Ocean Fin. Fed. Cred. Union*, 456 F. Supp. 3d 474, 486 (E.D.N.Y. Apr. 22, 2020); *Chambers*,

2020 WL 7261155, at *5; *Roy v. ESL Fed. Cred. Union*, 19-CV-6122, 2020 WL 5849297, at *10

(W.D.N.Y. Sept. 30, 2020); *Perks v. TD Bank, N.A.,* 444 F. Supp. 3d 635, 641 (S.D.N.Y. Mar.

17, 2020).

When addressing the claim for breach of the implied covenant in the Amended

Complaint, Plaintiffs incorporate by reference their previous allegations and list the following

facts to support their claim:

> Plaintiffs and each of the Class Members entered into contracts
> with Defendant covering the subject of overdraft transactions,
> which has been identified herein as the Account Agreement
> contract which covers overdraft fees and NSF fees. The contracts
> were drafted by and are binding upon Defendant. Nowhere in its
> contracts did Defendant state that it would sequester funds for a
> transaction and thereby reduce the 'available balance' by the
> amount of sequestered funds, yet nonetheless charge a fee at the
> time of the posting of the transaction despite already having set
> those funds aside. Nowhere did Defendant state it would charge
> more than one fee for the same item. Nowhere did Defendant state
> it would impede or disable access to its customers' electronic
> transactions so as to cause them further fees.

(Dkt. No. 42, at ¶¶ 111, 115.) These allegations are the exact same as those used to support

Plaintiffs' breach-of-contract claim. Although Plaintiffs may plead alternative and inconsistent

causes of action, they have not done so here; "instead, [they have] pled a *duplicative* cause of

action." *Richard*, 2021 WL 810218, at *15 (emphasis in original). The Court therefore dismisses

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

31

**B.**   Whether the Court Should Dismiss Plaintiffs' Claim for Unjust
Enrichment/Restitution

After carefully considering the matter, the Court answers the question in the affirmative

for the reasons stated in the Bank's memoranda of law. (Dkt. Nos. 46-2, 54.) To those reasons,

the Court adds the following analysis.

Similar to its arguments regarding Plaintiffs' claim for breach of the implied covenant of

good faith and fair dealing, the Bank argues that Plaintiffs' claim for unjust

enrichment/restitution must be dismissed because it duplicates their breach-of-contract claim.

(Dkt. No. 46-2, at 21-22.) Plaintiffs respond that, at this stage of the lawsuit, and pursuant to

Fed. R. Civ. P. 8(d), Plaintiffs may plead alternative and inconsistent legal theories, such as

breach of contract and unjust enrichment. (Dkt. No. 49-1, at 23-24.) To do so, Plaintiffs rely

heavily on one case from this District. *Story v. SEFCU*, 18-CV-0764, 2019 WL 2369878

(N.D.N.Y. June 5, 2019) (D'Agostino, J.).

Plaintiffs' reliance on *Story v. SEFCU* is misplaced, as Judge Sannes thoroughly

described in *Richard v. Glens Falls National Bank*:

> *Story* involved a motion to dismiss for lack of standing, rather than
> for failure to state a claim. The *Story* court acknowledged that
> 'Plaintiff's claim for unjust enrichment is likely precluded by the
> Opt-In contract, provided that the Opt-In contract is an enforceable
> agreement about the assessment of overdraft fees.' 2019 WL
> 2369878, at *6. Nonetheless, the court declined to dismiss the
> claim at the standing stage because, given disputes about whether
> the parties had actually executed a valid contract, 'at this stage of
> the proceedings, the Court does not know for a fact whether a
> contract exists between Plaintiff and Defendants.' *Id.*
>
> By contrast, here, no party seriously disputes that the Account
> Agreement is a valid, enforceable contract that governs the issues
> raised in the Complaint; the only disputes relate to the
> interpretation of particular provisions. Under these circumstances,

32

> courts in this Circuit have generally dismissed quasi-contract claims.

*Richard*, 2021 WL 810218, at *16. In fact, Judge D'Agostino, who authored *Story*, just recently identified the same distinctions between the facts underlying *Story* and those in cases such as this (i.e., where "there is no serious dispute as to whether there was a valid and enforceable contract between the parties"). *Petrey*, 2021 WL 2364971, at *6. Accordingly, the Court is not persuaded by the holding in *Story*, because the factual allegations of this case do not plausibly suggest that the parties dispute the validity or enforceability of the account documents.

Because Plaintiffs do not allege that the relevant account documents are invalid or unenforceable, the Court dismisses Plaintiffs' claim for unjust enrichment/restitution. *See Perks*, 444 F. Supp. 3d at 642 ("It is well settled that a claim for unjust enrichment will not lie if the parties have a contract. Although an exception to that rule exists when there is a question whether the contract is valid, that exception does not apply here."); *Chambers*, 2020 WL 7261155, at *6 ("The exception does not apply here, as there is no question that the contract between Plaintiff and HSBC is valid, only a question as to the scope of the term 'item' within that contract."); *McNeil*, 2020 WL 5802363, at *3 ("Given that Plaintiff does not allege the Account Agreements are invalid or unenforceable, his unjust enrichment claim fails as a matter of law.").

**C.** Whether the Court Should Dismiss Plaintiffs' Claim for Money Had and Received

After carefully considering the matter, the Court answers the question in the affirmative for the reasons stated in the Bank's memoranda of law. (Dkt. Nos. 46-2, 54.) To those reasons, the Court adds the following analysis.

33

"Under New York law, 'claims for unjust enrichment and money had and received are identical.'" *Story*, 2019 WL 2369878, at *5 (quoting *J.C. Penney Corp. v. Carousel Ctr. Co., L.P.*, 635 F. Supp. 2d 126, 129, n.1 (N.D.N.Y. 2008) (D'Agostino, J.)); *Almazan v. Almazan*, 14-CV-0311, 2015 WL 500176, at *14 (S.D.N.Y. Feb. 4, 2015) (finding the plaintiffs' claim for money had and received "survive[d] for the same reasons" as their unjust enrichment claim); *Maxus Leasing Grp. v. Kobelco Am., Inc.*, 04-CV-0518, 2007 WL 655779, at *5, n. 15 (N.D.N.Y. Feb. 26, 2007) (Scullin, J.). Neither party disputes this principle of law. (Dkt. No. 49-1, at 24 [agreeing with the accuracy of the Bank's cited authorities].)

Accordingly, based on the Court's ruling on Plaintiffs' claim for unjust enrichment/restitution, the Court dismisses Plaintiffs' claim for money had and received.

> **D.** Whether the Court Should Dismiss Plaintiffs' Claim for Violation of the Electronic Fund Transfers Act (Regulation E)

After carefully considering the matter, the Court answers the question in the affirmative for the reasons stated in the Bank's memoranda of law. (Dkt. Nos. 46-2, 54.) To those reasons, the Court adds the following analysis.

The Bank argues that the Court should dismiss Plaintiffs' Regulation E claim because Plaintiffs do not allege in the Amended Complaint that they ever opted into a Regulation E "Opt-In" Contract. (Dkt. No. 46-2, at 5, 22.) Additionally, the Bank argues that Plaintiffs' Regulation E claim is time barred, because the EFTA has a one-year statute of limitations for Regulation E claims, which accrues upon the date of the first allegedly improper transaction. (*Id.* at 22.) Plaintiffs' response contains only a footnote stating that "[the Bank's] attack on the Regulation E claim should be denied for the identical reason as the APPSN claim attack, as Reg[ulation] E transactions are only those involving a debit card or ATM withdrawal and pertain to the same

34

language." (Dkt. No. 49-1, at 15.)

After reviewing the Amended Complaint, the Court does not see any allegations by

Plaintiffs that they entered into a Regulation E Opt-In Contract. (*See generally* Dkt. No. 42.) In

the first few pages of the Amended Complaint, Plaintiffs describe Regulation E and its purpose,

as well as the information that must be included in a Regulation E Opt-In Contract. (*Id.* at ¶¶ 13-

15.) Plaintiffs then state as follows:

> If the financial institution does not obtain proper, affirmative
> consent from the customer that meets all of the requirements of
> Regulation E's Opt-In Rule, including fulfilling each of the above
> requirements, then it is not permitted to charge overdraft fees on
> ATM and one-time debit card transactions. On information and
> belief, although formal discovery will be required to confirm this,
> Defendant did not fulfill these Regulation E prerequisites. The
> requirements which it did not fulfill, on information and belief,
> include, *inter alia*, in its Overdraft Protection contract document,
> failing to correctly describe the program pursuant to which
> Defendant actually assessed these overdraft fees, failing to abide
> by its terms, and also using it as an impermissible marketing
> vehicle.

(*Id.* at ¶ 15.) Plaintiffs restate these allegations later in the Amended Complaint when asserting

their Regulation E claim. (*Id.* at ¶¶ 123-27.)[16]

Plaintiffs' allegations in the Amended Complaint are not like those in *Story v. SEFCU*,

where the court denied the defendant's motion to dismiss the Regulation E claim after the

---

[16]     "Defendant failed to comply with Regulation E, 12 C.F.R. § 1005.17, which requires
affirmative consent before a financial institution is permitted to assess overdraft fees against
customer's accounts through an overdraft program for ATM and non-recurring debit card
transactions. Defendant has failed to comply with the 12 C.F.R. § 1005.17 opt-in requirements,
including *inter alia* failing to provide its customers with a valid description of the overdraft
program which meets the strictures of 12 C.F.R. § 1005.17. It did not in its Opt-In contract
describe in a 'clear and readily understandable way' that it would be using its APPSN
accounting gimmick to assess overdraft fees on ATM and debit card transactions." (Dkt. No. 42,
at ¶ 127.)

defendant alleged that the plaintiff "never affirmatively allege[d] that she opted in to SEFCU's Regulation E overdraft program." 2019 WL 2369878, at *4-5. In *Story*, the court found that the Regulation E claim survived the defendant's motion to dismiss because the plaintiff included the following allegation in her complaint: "SEFCU entered into a contract with Plaintiff and its other customers specifically dictating the terms of its optional overdraft program ('Opt-In Contract') which is attached hereto as Exhibit 1." *Id*. at *5. Without similar allegations indicating Plaintiffs entered into a Regulation E Opt-In contract, Plaintiffs' Amended Complaint fails to state a Regulation E claim and is dismissed.[17] *See Boco v. Argent Mortg. Co., LLC*, 13-CV-1165, 2014 WL 1312101, at *3 (E.D.N.Y. Mar. 31, 2014) ("Generally speaking, a non-party to a contract lacks standing to challenge an agreement in the absence of terms demonstrating that it is a third-party beneficiary.").

    **E.**     Whether the Court Should Dismiss Plaintiffs' Claim for Violation of New York GBL § 349

After carefully considering the matter, the Court answers the question in the affirmative for the reasons stated in the Bank's memoranda of law. (Dkt. Nos. 46-2, 54.) To those reasons, the Court adds the following analysis.

The Bank argues that Plaintiffs' New York GBL § 349 claim should be dismissed for two reasons: (1) allegations that a defendant operates its principal place of business in New York or hatched a deceptive scheme in New York are insufficient to establish the required nexus for a GBL claim; and (2) Plaintiffs failed to allege that the Bank denied them services for which they

---

[17]     The Court also notes that, based on the Amended Complaint, Plaintiffs do not seem to allege that they did not receive an Opt-In contract and that failing to receive such document violated Regulation E. Rather, Plaintiffs appear to challenge the sufficiency of the Opt-In contract's terms under Regulation E, which, as previously stated, they do not have standing to challenge.

contracted because they do not allege that they contracted for services like overdraft fee protection, and that the Bank failed to provide that service. (Dkt. No. 46-2, at 30.)

"Section 349 prohibits '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state' and provides a cause of action to 'any person who has been injured' by a violation of the section." *Cruz*, 720 F.3d at 122 (quoting N.Y. Gen. Bus. Law § 349(a), (h)). "In order to successfully assert a claim under GBL § 349, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Kronenberg v. Allstate Ins. Co.*, 18-CV-6899, 2020 WL 1234603, at *2 (E.D.N.Y. Mar. 13, 2020); *Richard*, 2021 WL 810218, at *16.

In *Cruz v. FXDirectDealer, LLC*, the Second Circuit addressed the limiting phrase "in this state" found in GBL § 349 and held that "the appropriate test . . . is to focus on the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction, rather than 'on the residency of the parties.'" *Cruz*, 720 F.3d at 122. After interpreting relevant case law from the New York Appellate Division, the *Cruz* court noted that, "[a]lthough it is a somewhat close call, . . . [we] conclude that a deceptive transaction in New York falls within the territorial reach of section 349 and suffices to give an out-of-state victim who engaged in the transaction statutory standing to sue under section 349." *Id.* at 123; *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 110 (E.D.N.Y. Feb. 13, 2020).

Despite this lenient standard, however, Plaintiffs have not alleged facts plausibly suggesting that the alleged deceptive transactions occurred in New York. In their response to the Bank's motion, Plaintiffs mention only that "the majority of class members will be New York

citizens, and that defendant is headquartered in New York state." (Dkt. No. 49-1, at 24-25.) In

their Amended Complaint, although Plaintiffs outline the disputed practices, none of the facts

allege that these transactions occurred in New York. (Dkt. No. 42, at ¶ 5.) Plaintiffs do not

allege, for example, that the transactions at issue occur in New York (either at the Bank's

headquarters or one of the New York branch locations), that the account documents specify that

New York law governs all disputes between the parties, or any other fact tying the transactions at

issue to the state of New York.[18] The Court notes that these factual allegations, standing alone,

may still not be sufficient to establish Plaintiffs' standing on the GBL § 349 claim,[19] but the

Court need not further analyze the issue because Plaintiffs' Amended Complaint does not "allege

strong New York connections to the alleged out-of-state deceptive acts . . . ." *Voronina*, 2017

WL 74731, at *4. Plaintiffs have not identified case law supporting their position that they may

---

[18]        *See Cruz*, 720 F.3d at 123-24 (finding the following facts supported an out-of-state
plaintiff's standing to bring a GBL § 349 claim: "[Defendant] is paid in New York and refuses to
disburse funds from customer accounts until it receives a 'Funds Redemption Form' at its New
York office"; "[Defendant] requires that all customer communications, including the Agreement
and objections to trades, be sent to its New York office"; "The Agreement specifies that New
York law governs all disputes between Cruz and [Defendant]"); *Cline v. TouchTunes Music
Corp.*, 211 F. Supp. 3d 628, 634 (S.D.N.Y. Sept. 29, 2016) (finding issue with the fact that, if
allowing a GBL § 349 claim to move forward for certain plaintiffs, it would have "New York's
consumer protection laws . . . regulat[ing] commercial transactions in far-flung states and nations
where the connections between the alleged deception and New York are somewhat strained");
*Wright*, 439 F.Supp.3d at 110-12 (finding no standing for GBL § 349 claim where "the new
allegations assert[ed] that the Defendants hatched the deceptive scheme in New York, sent the
relevant advertising materials from New York, and received payment and processed orders in
New York," because these facts "neither individually or cumulatively establish[ed] that some
part of the underlying transaction occurred in New York State" and rather "[were] merely clever
re-articulations of the allegation that the Defendants operate their principal place of business in
New York"); *Fishon v. Peloton Interactive, Inc.*, 19-CV-11711, 2021 WL 2941820, at *3-6
(S.D.N.Y. July 12, 2021) (explaining that the plaintiff's alleged facts about the disputed
transaction's connection to New York were insufficient to confer standing to bring a claim under
GBL § 349).

[19]        *Fishon*, 2021 WL 2941820, at *3-5; *Wright*, 439 F. Supp. 3d at 110-12.

rely solely on the Bank's headquarters in New York, along with the potential for class members within the state, to provide them standing for their GBL § 349 claim. *See Horn v. Med. Marijuana, Inc.*, 383 F. Supp. 3d 114, 128 (W.D.N.Y. 2019), *mod. on reconsideration*, 15-CV-701, 2019 WL 11287650 (W.D.N.Y. Nov. 22, 2019) ("If any bright-line principle can be discerned from *Goshen* and *Cruz*, it is that Sections 349 . . . [is] not intended to regulate New York businesses or protect New York residents solely on the basis of their residency; they are intended to police consumer transactions that 'take place in New York State,' regardless of the residency of the parties.").

Ultimately, without allegations in the Amended Complaint indicating "the strength of New York's connection to the allegedly deceptive transaction," *Cruz*, 720 F.3d at 122, the Court finds that Plaintiffs do not have standing to bring a GBL § 349 claim and the claim is therefore dismissed.

      **F.**    Whether the Court Should Grant Plaintiffs' Request for Leave to Amend Their Amended Complaint

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated below.

In its response to the Bank's motion to dismiss, Plaintiffs included a footnote requesting leave to amend, should the Court grant any portion of the Bank's motion to dismiss. (Dkt. No. 49-1, at 25, n. 12.) As the Court explained in *Sobon v. Horizon Eng'g Assocs., LLP*, this request to amend (from a counselled Plaintiff) is procedurally defective:

> Plaintiff's purported cross-motion to amend her complaint consists of one sentence at the conclusion of her memorandum of law requesting leave to amend her complaint pursuant to Fed. R. Civ. P. 15(a)(2). Such a motion is procedurally defective. Plaintiff has failed to comply with Local Rule [15.1] of the Local Rules of

39

> Practice for this Court, requiring the attachment of an unsigned
> copy of the proposed amended pleading to her motion papers,
> which must identify the amendments in the proposed pleading,
> either through the submission of a red-lined version of the original
> pleading or other equivalent means.

*Sobon v. Horizon Eng'g Assocs., LLP*, 13-CV-1431, 2014 WL 4889340, at *11 (N.D.N.Y. Sept. 30, 2014) (Suddaby, C.J.).

Further, the Court holds that, with the exception of Plaintiffs' claim for breach of contract related to the mobile banking software upgrade in August 2020 and September 2020 and the GBL § 349 claim, leave to amend is unwarranted. Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint should be freely given "[i]n the absence of any apparent or declared reason to not grant leave to amend[,] such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." *Foman*, 371 U.S. at 182. "[W]here it appears that granting leave to amend is unlikely to be productive,  . . . it is not an abuse of discretion to deny leave to amend." *Manship v. T.D. Bank, N.A.*, 12-CV-0329, 2021 WL 981587, at *13-14 (N.D.N.Y. Mar. 16, 2021) (Suddaby, C.J.) (internal citations and quotation marks omitted). "'[A]n opportunity to amend is not required where the defects in plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile.'" *Manship*, 2021 WL 981587, at *13-14 (quoting *Sorrentino v. Barr Labs Inc.,* 09-CV-0591, 2010 WL 2026135, at *5 (N.D.N.Y. May 20, 2010)).

In this Decision and Order, the Court dismisses the following six claims: (1) the claim for breach of contract based on the alleged software upgrade in August 2020 to September 2020; (2) the claim for breach of the implied covenant of good faith and fair dealing; (3) the claim for

40

unjust enrichment/restitution; (4) the claim for money had and received; (5) the claim for violation of the EFTA (Regulation E); and (6) the claim for violation of New York GBL § 349. The defects in Plaintiffs' claims with respect to breach of the implied covenant of good faith and fair dealing, unjust enrichment/restitution, and money had and received are all substantive, as the Court described in previous portions of this Decision and Order. Accordingly, amendment is not required, and the claims will be dismissed with prejudice. *Manship*, 2021 WL 981587, at *13-14.

With respect to Plaintiffs' Regulation E claim, the Court finds any further amendment is unwarranted, because Plaintiffs previously had the opportunity to cure the deficiencies underlying this claim. Plaintiffs, who are represented by counsel, already amended their Complaint once, but failed to include in either the Complaint or Amended Complaint that they entered into the Opt-In contract that forms the basis of their Regulation E claim. (Dkt. No. 41.) The Court accordingly will dismiss this claim with prejudice. *Foman*, 371 U.S. at 182.

The Court finds, however, that Plaintiffs may be able to provide additional factual allegations regarding their standing to bring a New York GBL § 349 claim and the contract provision(s) allegedly breached during the mobile banking software upgrade in August 2020 and September 2020. The Court notes that, like Plaintiffs' Regulation E claim, Plaintiffs had the opportunity to amend and include the requisite factual allegations for their breach-of-contract claim based on the mobile banking software upgrade.  Nonetheless, the Court believes the defects in Plaintiffs' Amended Complaint with respect to this claim, as well as the GBL § 349 claim, may be formal, rather than substantive. *Manship*, 2021 WL 981587, at *13-14. Additionally, the Court believes that additional factual allegations could show that the transactions at issue in this lawsuit have a sufficient nexus to the State of New York, making

41

amendment of the GBL § 349 claim not futile. *Foman*, 371 U.S. at 182. As a result, these claims are dismissed without prejudice.[20]

**ACCORDINGLY,** it is

**ORDERED** that the Bank's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (Dkt. No. 46) is **DENIED** with respect to Plaintiffs' breach-of-contract claim(s) based on the allegations regarding OD fees on APPSN transactions and multiple NSF fees on the same item;

**ORDERED** that the Bank's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (Dkt. No. 46) is **GRANTED** with respect to the following claims, which are **DISMISSED** **with prejudice:**

      (a) the claim for breach of the implied covenant of good faith and fair

          dealing;

      (b) the claim for unjust enrichment/restitution;

      (c) the claim for money had and received;

      (d) the claim for violation of the Electronic Funds Transfer Act (Regulation

          E); and it is further

**ORDERED** that that the Bank's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (Dkt. No. 46) is **GRANTED** with respect to the breach-of-contract claim based on the allegations regarding the improper software upgrade in August 2020 to September 2020 and the New York General Business Law § 349 claim, which is **DISMISSED without prejudice** to refiling upon a successful motion to amend within **THIRTY (30) DAYS** of the

---

[20]    The Court cautions Plaintiffs that this opportunity to move to amend is the last one that the Court will permit.

filing of this Decision and Order.


Date:   March 16, 2022
        Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge