# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DEBORAH J. LIVINGSTON and DENA SCROGGINS, Individually and on behalf of all others similarly situated, | **:** | Case No.: 1:20-cv-1030 (GTS-ML) (Lead Case); Consolidated With Case |
| | **:** | No.: 1:21-cv-336 (GTS/ML) (Member |
| Plaintiffs, | **:** | Case) and Case No.: 1:21-cv-238 (GLS/ATB) (Member Case) |
| | **:** | |
| v. | **:** | |
| | **:** | |
| TRUSTCO BANK, A FEDERAL SAVINGS BANK, | **:** | |
| | **:** | |
| Defendant. | **:** | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF** <u>**CLASS ACTION SETTLEMENT**</u>

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. iii

MEMORANDUM ............................................................................................................... 1

I     SUMMARY .............................................................................................................. 1

II    HISTORY OF THE CASE ..................................................................................... 2

    A.    Procedural Background.................................................................................... 2

    B.    Discovery and Mediation ............................................................................... 4

III   TERMS OF THE SETTLEMENT ......................................................................... 4

    A.    Class Definition .............................................................................................. 4

    B.    The Settlement Amount ................................................................................. 5

    C.    Payments to Class Members .......................................................................... 5

    D.    *Cy Pres* Distribution ..................................................................................... 5

    E.    Class Notice ................................................................................................... 6

    F.    Opt Out Procedure ......................................................................................... 7

    G.    Opportunity to Object .................................................................................... 7

    H.    Attorneys' Fees and Costs ............................................................................. 7

    I.    Service Awards .............................................................................................. 9

IV   ARGUMENT ......................................................................................................... 10

    A.    The Settlement Should Be Preliminarily Approved ................................... 10

         1.    The Rule 23(e) Criteria for Granting Preliminary Approval ................... 11

         2.    The Settlement Is Reasonable, Fair, and Adequate Given the Strength of the Case and the Risks of Litigation ........................................................ 11

         3.    The Settlement Treats Class Members Equally ....................................... 13

i

        4.      The Settlement Was Negotiated at Arm's Length ................................... 13

        5.      The Proposed Forms of Notice and Notice Programs Are Appropriate ... 14

   **B.**     The Proposed Settlement Class Should Be Certified............................................ 15

        1.      The Requirement of Numerosity Is Satisfied............................................. 15

        2.      The Requirement of Commonality Is Satisfied ........................................ 16

        3.      The Requirement of Typicality Is Satisfied .............................................. 16

        4.      The Requirement of Adequate Representation Is Satisfied ...................... 17

        5.      The Proposed Settlement Class also Satisfies Rule 23(b)(3)................... 18

        a.      Common Questions of Law and Fact Predominate ................................. 18

        b.      This Class Action Is the Superior Method of Adjudication..................... 19

   **C.**     Proposed Schedule of Future Dates ....................................................... 19

**V**    CONCLUSION............................................................................................................ 20

## TABLE OF AUTHORITIES

Cases

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997) ......................................................................................... 15, 16

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997). .............................................. 15

*Aude v. Kobe Steel, Ltd.*,
    *No. 17-CV-10085 (VSB), 2018 WL 1634872 (S.D.N.Y Apr. 4, 2018)* ...................... 17

*Bozak v. FedEx Ground Package Sys., Inc.*,
    2014 WL 3778211 (D. Conn. July 31, 2014) ............................................................ 8

*Capsolas v. Pasta Res. Inc.*,
    2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) ........................................................... 8

*Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed*
    *Care, LLC*, 504 F.3d 229 (2d Cir. 2007) ................................................................ 7

*Charron v. Wiener*,
    731 F.3d 241 (2d Cir. 2013) .................................................................................... 14

*Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) .............................................. 14

*Cohen v. J.P. Morgan Chase & Co.*,
    262 F.R.D. 153 (E.D.N.Y. 2009) ........................................................................... 19

*Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153 (E.D.N.Y. 2009). ..................... 19

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ...................................................................................... 16

*Duprey v. Connecticut Dept. of Motor Vehicles,* 191 F.R.D. 329 (D. Conn. 2000 ..................... 17

*Duprey v. Connecticut Dept. of Motor Vehicles*,
    191 F.R.D. 329 (D. Conn. 2000) ............................................................................ 17

*Fleisher v. Phx. Life Ins. Co.*, Civil Action No. 11-cv-8405 (CM),
    2015 U.S. Dist. LEXIS 121574, at *51-55 (S.D.N.Y. Sep. 9, 2015) ........................ 12

*Gilliam v. Addicts Rehab. Ctr. Fund*,

    2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ........................................................... 8

*Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35 (W.D.N.Y. Oct. 23, 2018). ............ 14

*Hayes v. Harmony Gold Mining Co.*,

    509 F. App'x 21 (2d Cir. 2013)................................................................................. 7

*Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013). .................................. 7

*In re Checking Account Overdraft Litig.* (S.D. Fla. Aug. 10, 2020) No. 1:09-MD-02036-JLK,

    2020 WL 4586398................................................................................................... 9

*In re Drexel Burnham Lambert Group, Inc.*,

    *960 F.2d 285 (2d Cir. 1992)* ................................................................................. 17

*In re Initial Pub. Offering Sec. Litig.*,

    671 F. Supp. 2d 467 (S.D.N.Y. 2009)...................................................................... 8

*In re Nassau County Strip Search Cases*,

    461 F.3d 219 (2d Cir. 2006)................................................................................... 19

*In re Traffic Exec. Ass'n-E. Railroads*, 627 F.2d 631 (2d Cir. 1980)........................................... 11

*In re Viropharma Inc. Sec. Litig.*, No. CV 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) 14

*Kemp-DeLisser v. St. Francis Hospital and Medical Center Fin. Committee*, 2016 WL 6542707

    (D. Conn. Nov. 3, 2016)........................................................................................ 14

*Landmen Partners, Inc. v. Blackstone Grp., L.P.*,

    No. 08-cv-03601-HB-FM, 2013 WL 11330936 (S.D.N.Y. Dec. 18, 2013) ............................. 8

*McReynolds v. Richards-Cantave*,

    588 F.3d 790 (2d Cir. 2009)................................................................................... 14

*McReynolds v. Richards-Cantave*, 588 F.3d 790 (2d Cir. 2009)................................................. 14

*Menkes v. Stolt-Neilsen S.A.*,

    270 F.R.D. 80 (D. Conn. 2010).............................................................................. 19

*Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80 (D. Conn. 2010) .................................................. 19

iv

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ........................................................... 8

*O'Dell v. AMF Bowling Centers, Inc*., 2009 WL 6583142 (S.D.N.Y. Sept. 18, 2009) ............... 11

*Ramirez v. Baxter Credit Union* (N.D. Cal. Dec. 22, 2017) No. 16-CV-03765-SI, Dkt. No. 81 . 10

*Ramirez v. Baxter Credit Union* (N.D. Cal. Dec. 22, 2017) No. 16-CV-03765-SI, Dkt. No. 81 at
   ¶ 17 .................................................................................................................. 10

*Ramirez v. Baxter Credit Union,* No. 16-CV-03765-SI, Dkt. No. 81(N.D. Cal. Dec. 22, 2017) . 10

*Richard v. Glens Falls National Bank* (N.D.N.Y. July 22, 2022) No. 1:20-cv-00734 (BKS/DJS) 9

*Richard v. Glens Falls National Bank* (N.D.N.Y. July 22, 2022) No. 1:20-cv-00734 (BKS/DJS),
   Dkt. No. 72 ......................................................................................................... 9

*Roberts v. Capital One* (S.D.N.Y. Dec. 2, 2020) No. 1:16-cv-04841-LGS, Dkt. No. 199 .... 10, 13

*Roberts v. Capital One*, No. 1:16-cv-04841-LGS, Dkt. No. 199 ................................... 10

*Swift v. BancorpSouth*, (N.D. Fla. July 15, 2016) No. 1:10-cv-00090-GRJ, Dkt. No. 102 ......... 9

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S.Ct. 1036 (2016) .......................................................................................... 19

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036 (2016). ........................................ 19

*U.S. v. City of New York*,
   276 F.R.D. 22 (E.D.N.Y. 2011) .............................................................................. 16

*U.S. v. City of New York,* 276 F.R.D. 22, 28 (E.D.N.Y. 2011) ..................................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ......................................................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). .......................................... 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ..................................................................................... 7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) .................................................................................... 14

**Statutes**

Fed. R. Civ. P. 23(a) .................................................................................................. 15

Fed. R. Civ. P. 23(a)(3) ............................................................................................. 16

Fed. R. Civ. P. 23(a)(4) ............................................................................................. 17

Fed. R. Civ. P. 23(b)(3) ........................................................................................ 18, 19

Fed. R. Civ. P. 23(b) ................................................................................................. 15

Fed. R. Civ. P. 23(e)(1)(B) ....................................................................................... 11

Federal Rules of Civil Procedure, Rule 23, Adv. Comm. Notes to 2018 Amendments ......... 17, 20

N.Y. Civil Rights Law §§ 70-71 ................................................................................. 3

NYS Civil Rights Law §§ 70, 71 ............................................................................... 2

**Treatises**

1 Newberg on Class Actions § 3.13 (3d ed. 1992) ........................................................ 22

4 Newberg on Class Actions § 13:13 (5th ed.) ........................................................... 17

## MEMORANDUM

## I      SUMMARY

This Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion") concerns three consolidated class action lawsuits against Defendant Trustco Bank ("Trustco" or "Defendant"): *Livingston, et al v. Trustco Bank* (Lead Case), United States District Court for the Northern District of New York, Case No.: 1:20-cv-01030 (GTS-ML); *Lamoureux v. Trustco Bank* (Member Case), United States District Court for the Northern District of New York, Case No.: 1:21-cv-336 (GTS/ML); and, *Jenkins v. Trustco Bank* (Member Case), United States District Court for the Northern District of New York, Case No.: 1:21-cv-238 (GLS/ATB). In the consolidated putative class action, Plaintiffs Deborah Livingston, Dena Scroggins, Robert Lamoureux, and Tammy Jenkins ("Plaintiffs") allege that Trustco assessed certain overdraft ("OD") and Non-Sufficient Funds ("NSF") fees in breach of its contracts with customers. Trustco disputes this.

After substantial law and motion practice, significant formal discovery, and a mediation before the Hon. Randolph Treece (Ret.), the parties have reached a proposed settlement, subject to this Honorable Court's approval.   Under the terms of the settlement, Trustco will create a Settlement Fund in the amount of $2,750,000.   (SA ¶ 1(bb).)   A true and correct copy of the fully executed Settlement Agreement ("SA") is attached as Exhibit 1 to the concurrently filed Declaration of Taras Kick ("Kick Decl.").

As the proposed settlement meets all criteria for preliminary approval, Plaintiffs' counsel respectfully requests that the Court preliminarily approve the settlement so that notice of a final approval hearing may be disseminated.

///

///

1

## II       HISTORY OF THE CASE

### A.       Procedural Background

Plaintiff Livingston initially filed this class action in the Northern District of New York on September 2, 2020, alleging (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) unjust enrichment, (4) money had and received, (5) violation of Electronic Fund Transfers Act (Regulation E), and (6) violation of New York General Business Law § 349. (ECF No. 1.) On December 7, 2020, Trustco filed its Answer to the Complaint, including counterclaims for defamation per se for filing a lawsuit on behalf of unknown persons knowing that it lacked a factual basis. (ECF No. 22.) Plaintiff Livingston filed a motion to dismiss Trustco's counterclaims and strike its affirmative defenses on December 28, 2020. (ECF No. 25.)

On February 11, 2021, Plaintiff Livingston moved to amend the Complaint, seeking to add Dena Scroggins as a named plaintiff, and to add additional allegations. (ECF No. 29.) Trustco filed its Opposition to the Motion for Leave to Amend on March 4, 2021, arguing that amendment would be futile. (ECF No. 32.) The Court granted the Motion for Leave to Amend on April 23, 2021. (ECF No. 41.)

Trustco filed its Motion to Dismiss the Amended Complaint on June 16, 2021. (ECF No. 46.) Plaintiffs Livingston and Scroggins filed their Opposition on July 7, 2021. (ECF No. 47.) On March 16, 2022, the Court denied Trustco's Motion to Dismiss in the *Livingston* action with respect to the breach of contract cause of action, and granted the Motion to Dismiss as to the other causes of action. (ECF No. 66.)

On October 29, 2021, having obtained the consent of both parties, the Court consolidated the *Livingston* and *Lamoureux* actions. (ECF No. 63.) Trustco then filed an Answer to the Amended Complaint, again asserting counterclaims. (ECF No. 67.) Plaintiffs filed their Motion to

Dismiss the counterclaims on May 25, 2022. (ECF No. 70.) On June 29, 2022, Defendant filed its Opposition to the Motion to Dismiss the counterclaims, and withdrew its counterclaim for defamation per se. (ECF No. 83.) On March 17, 2023, the Court dismissed Defendant's counterclaim for defamation per se with prejudice. (ECF No. 113.)

On January 13, 2023, the Court entered an Order consolidating the *Jenkins* action with the *Livingston* action, with the *Livingston* action being designated the lead case. (ECF No. 99.) On February 28, 2023, Defendant filed a letter brief requesting that the *Jenkins* action be severed from the *Livingston* action. (ECF No. 107.) Plaintiffs filed an opposition. (ECF No. 112.) The Court denied Defendant's motion on March 20, 2023. (ECF No. 114.)

Plaintiff Lamoureux filed the *Lamoureux* action in the Northern District of New York on March 24, 2021, alleging the same causes of action as the already filed *Livingston* plaintiffs, based on Trustco's assessment of APPSN fees and Retry NSF fees. (ECF No. 1.) Defendant filed its Motion to Dismiss the Complaint on June 22, 2021; Plaintiff Lamoureux filed an Opposition on August 31, 2021; and Defendant filed its Reply on October 4, 2021. (ECF No. 17, 22, 26.) On March 16, 2022, the Hon. Glenn T. Suddaby denied the Motion to Dismiss with respect to the breach of contract and GBL § 349 causes of action, and dismissed the other claims. (ECF No. 31.)

Plaintiff Thomas Jenkins filed the *Jenkins* action in the Northern District of New York on March 1, 2021, alleging (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) unjust enrichment, and (4) violation of New York General Business Law § 349, based on the Retry NSF theory of liability only. (ECF No. 1.) Defendant filed its Motion to Dismiss the Complaint on June 17, 2021; Plaintiff Jenkins filed an Opposition on July 8, 2021; and Defendant filed its Reply on July 23, 2021. (ECF No. 26, 27, 30.) On August 16, 2022, the Hon. Gary L. Sharpe denied the Motion to Dismiss with respect to the breach of contract cause of

action, and dismissed the other claims. (ECF No. 34.) Following briefing, the Court permitted the

substitution of Plaintiff Tammy Jenkins, administrator and representative of the estate of Thomas

Jenkins, for the deceased Plaintiff Thomas Jenkins. (ECF No. 111.)

      **B.**    **Discovery and Mediation**

      The investigation and discovery conducted in this matter have been adequate to give the

Plaintiffs and Class Counsel a sound understanding of the merits of their position, Defendant's

defenses, and to evaluate the reasonable value range of the claims of the Class. In formal discovery,

Plaintiffs have propounded interrogatories and requests for production to Defendant, to which

Defendant has responded, and Defendant has propounded interrogatories and requests for

production to Plaintiffs Livingston, Scroggins, and Lamoureux, to which these Plaintiffs have

responded.  (Kick Decl. ¶ 6.)   Both Plaintiffs' expert and Defendant's expert produced damages

analyses, which the Parties exchanged.  (*Id.*)  In addition, the parties and their experts met and

conferred regarding analysis of the class transaction data in several sessions, ensuring that both

sides understood the data as it related to Plaintiffs' claims.  (*Id.*)

      On November 28, 2023, the Parties participated in a mediation at the United States District

Court for the Northern District of New York Courthouse in Albany, New York, with the Hon.

Randolph Treece (Ret.) presiding.  (Kick Decl. ¶ 6.)  The matter did not settle on the day of the

mediation, but the Parties subsequently reached an agreement in principle to settle the matter

through Judge Treece.  (*Id.*)

**III**    **TERMS OF THE SETTLEMENT**

      **A.**    **Class Definition**

The Settlement Class is defined as follows:

[A]ll Trustco Bank account holders who have or have had accounts with Trustco
Bank  who from September 2, 2014 through December 10, 2023 were charged two
or more NSF Fees or an NSF Fee followed by an Overdraft Fee on the same ACH

transaction or check (the "Retry NSF" Class); and, all Trustco Bank account holders who have or have had accounts with Trustco Bank who from September 2, 2014 through December 10, 2023 were charged an Overdraft Fee on a point of sale Debit Card Transaction, where there was a sufficient available balance at the time the transaction was authorized but an insufficient available balance at the time the transaction was presented to Trustco Bank for payment and posted to the account (the "APPSN" Class).

(SA ¶ 1(aa).)

### B.    The Settlement Amount

The proposed settlement is for $2,750,000.  (SA ¶ 1(bb).)

### C.    Payments to Class Members

Each Class Member who paid the at-issue fees will receive a *pro rata* share of the Net Settlement Fund, based on the number of Retry NSF and APPSN fees that settlement class members paid during the Class Period.  (SA ¶ 7(d)(iv).)  The "Net Settlement Fund" is the amount remaining in the Settlement Fund after the following deduction: attorneys' fees of one-third of the Settlement Fund, or $916,666; litigation costs not to exceed $50,000; settlement administration costs; and, service award payments to the four proposed class representatives of $10,000 each. (SA ¶¶ 1(s), 7(d).)

The proposed method of payment is very consumer friendly as class members will not be required to make any claims.  (SA ¶ 7(d)(iv).)  Rather, class members will receive their share of the Settlement Fund via check, with no need to make any claim whatsoever.  (*Id.*)  Class members shall have one-hundred eighty days (180) to negotiate the check.  (*Id.*)

### D.    *Cy Pres* Distribution

In no event shall any portion of the Settlement Fund revert to Defendant.  (SA ¶ 7(d)(v).) Rather, any Residual Funds that remain after this period will be distributed to Public Citizen Foundation, a consumer advocacy 501(c) non-profit, subject to the approval of the Court.  (SA ¶ 10.)  Public Citizen has been approved by multiple courts across the country as an appropriate *cy*

5

*pres* recipient in class actions involving alleged improper banking fees such as those at issue in this case.  (Kick Decl. ¶ 12.)  An extensive description of Public Citizen's work and the manner in which it would use the *cy pres* funds is set forth in the concurrently filed Declaration of Robert Weissman, the President of Public Citizen, and more abut the organization is also at https://www.citizen.org/about/.  None of Plaintiffs' attorneys are involved in the governance of Public Citizen nor on its Board of Directors.  (Kick Decl. ¶ 14.)

### E.    Class Notice

Class members who are current account holders of Defendant and have agreed to receive electronic notifications from Defendant will receive notice of this settlement by email.  (SA ¶ 4(b).)  The Email Notice is proposed to be substantially as shown in Exhibit 2 to the Settlement Agreement.  (SA, Ex. 2.)  For those class members who did not agree to receive monthly statements by email or for whom Defendant does not have an email address listed in the Settlement Class Member List, Postcard Notice of the Settlement will be provided.  (SA ¶ 4(c).)  The Postcard Notice is proposed to be substantially as shown in Exhibit 1 to the Settlement Agreement.  (SA, Ex. 1.)  In addition, a settlement website will be hosted and contain the Long Form Notice substantially in the form of Exhibit 3 to the Settlement Agreement and as approved by the Court.  (SA, Ex. 3.)  This manner of notice when used in other overdraft fee class action cases prosecuted by proposed Class Counsel most often results in a successful direct notice reach of more than 90%.  (Kick Decl. ¶ 10.)

Class Counsel will solicit bids from three well-regarded claims administrators to provide the notice and administration services set forth in the Settlement Agreement.  Each of these firms has substantial experience administering overdraft fee class action settlements.  (Kick Decl. ¶ 10.)  Administration services in this matter will be carried out by the lowest of the three bidders. (Kick Decl. ¶ 10.)

6

**F.      Opt Out Procedure**

A class member who wishes to opt out can do so by letter by the Bar Date.  (SA ¶ 11.)

**G.      Opportunity to Object**

Any class member who wishes to object to the settlement terms can do so by mailing an objection to the Court, the settlement administrator, and Class Counsel.  (SA ¶ 12.)

**H.      Attorneys' Fees and Costs**

Federal courts recognize that a lawyer whose efforts create a common fund should recover a reasonable fee. *Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229 (2d Cir. 2007).  Although either a lodestar analysis or percentage-of-the-fund is permitted in the Second Circuit, the percentage-of-the-fund method, under which counsel is awarded a percentage of the fund they created, is often the preferred means to determine a fee because it "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005). "[T]he prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class." *Hayes v. Harmony Gold Mining Co*., 509 F. App'x 21, 24 (2d Cir. 2013).  The Second Circuit has noted that the "trend in this Circuit is toward the percentage method." *Wal-Mart*, 396 F.3d at 122.

Under the terms of the Settlement Agreement, Class Counsel may apply for attorneys' fees of up to one-third of the Settlement amount of $2,750,000, which equals $916,666.  (SA ¶ 7(d)(i).)

A one-third fee is a common award in the Second Circuit.  *See, e.g., Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, at *8 (S.D.N.Y. Oct. 5, 2012) ("Class counsel's request for one-third of the Fund is reasonable and consistent with the norms of class litigation in this circuit") (quotation omitted); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5

(S.D.N.Y. Mar. 31, 2009) (noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (fee equal to one-third of the settlement fund is reasonable and "consistent with the norms of class litigation in this circuit"); *Bozak v. FedEx Ground Package Sys., Inc.*, 2014 WL 3778211, at * 7 (D. Conn. July 31, 2014) ("The one-third amount that plaintiffs request is typical of awards in this Circuit.").

The one-third award is also common in the Second Circuit in much larger cases. *See, e.g.*, *Landmen Partners, Inc. v. Blackstone Grp., L.P.*, No. 08-cv-03601-HB-FM, 2013 WL 11330936, at *3 (S.D.N.Y. Dec. 18, 2013) (awarding 33-1/3% of $85 million recovery, plus expenses); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33-1/3% of $586 million recovery).

The requested fee award is also consistent with fee awards in overdraft fee class actions. *See, e.g.*, *Edwards v. Mid-Hudson Valley Fed. Credit Union*, No. 122CV00562TJMCFH, 2023 WL 5806409, at *10 (N.D.N.Y. Sept. 7, 2023) (awarding fees in the amount of "$754,851, which constitutes 33.33% of the total value of the settlement."); *Thompson v. Community Bank, N.A.*, No. 819CV919MADCFH, 2021 WL 4084148, at *10 (N.D.N.Y. Sept. 8, 2021) (awarding $1,153,610.00 in attorneys' fees, which constituted "33.33% of the Value of the Settlement."); *Lowe v. NBT Bank, N.A.*, No. 319CV1400MADML, 2022 WL 4621433, at *10 (N.D.N.Y. Sept. 30, 2022) (awarding attorneys' fees in the amount of "$1,416,652, which constitutes 33.33% of the cash Settlement Fund."); *Broockmann v. Bank of Greene Cnty.*, No. 122CV00390AMNATB, 2023 WL 7019273, at *12 (N.D.N.Y. Oct. 25, 2023) (approving "an award of attorneys' fees in the amount of $404,792.85, which constitutes 33.33% of the value of the Settlement."); *Richard v. Glens Falls National Bank* (N.D.N.Y. July 22, 2022) No. 1:20-cv-00734 (BKS/DJS), Dkt. No.

72 at ¶ 14 (33-1/3% awarded in overdraft fee class action); *In re Checking Account Overdraft Litig.* (S.D. Fla. Aug. 10, 2020) No. 1:09-MD-02036-JLK, 2020 WL 4586398 (35% of $7.5 million); *Swift v. BancorpSouth*, (N.D. Fla. July 15, 2016) No. 1:10-cv-00090-GRJ, Dkt. No. 102 (35% of $24 million).  Finally, Class Members will have a chance to opt-out or object to the award.

The requested fee award represents reasonable compensation to Class Counsel for the time and effort involved in prosecuting the case throughout its three-year history and overcoming the significant procedural hurdles outlined above, as will be discussed in greater detail in Plaintiffs' Motion for Final Approval.  Further, the award would reasonably compensate Class Counsel for its risk of non-payment, which it undertook by prosecuting this action on a contingent basis.  (Kick Decl. ¶ 4.)  Finally, although not required, a lodestar cross-check also will support the fee request, and Plaintiffs will provide sufficient information in the Motion For Final Approval should the Court wish to conduct such a cross-check.  Fees representing multiples of lodestar are regularly awarded in a case like this to reflect the contingency-fee risk and other relevant factors. *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("'Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.'").

Class Counsel will also seek an award of reasonable litigation costs in an amount not to exceed $50,000.  (SA ¶ 7(d)(i).)  The costs incurred to date are set forth in the concurrently filed Kick Declaration. (Kick Decl. ¶ 13.)

### I.    Service Awards

Plaintiffs will apply to the Court for service awards to each of the four named plaintiffs in this matter, namely Deborah Livingston, Dena Scroggins, Robert Lamoureux, and Tammy Jenkins.

As detailed in their concurrently filed declarations, Plaintiffs made significant contributions to the success of this lawsuit for the Class, undertook reputational risks, and expended time and effort on behalf of the Class. (Livingston Decl. ¶ 3; Scroggins Decl. ¶ 3; Lamoureux Decl. ¶ 3; Jenkins Decl. ¶ 3; *see also*, Kick Decl. ¶¶ 8-9.) Among other things, each of the Plaintiffs provided essential information for the prosecution of this action and in connection with negotiations and settlement, gathered and provided pertinent documents, took time to participate in phone calls with counsel, and reviewed the settlement documents. (Kick Decl. ¶ 9.) At no time did Plaintiffs ever have a guarantee of any personal benefit as a result of this case. (*Id.*)

The proposed service awards fall well within the range of reasonable incentive payments awarded to Class Representatives in similar class actions. *See, e.g., Ramirez v. Baxter Credit Union* (N.D. Cal. Dec. 22, 2017) No. 16-CV-03765-SI, Dkt. No. 81 at ¶ 17 (granting $10,000 service award in overdraft fee class action); *Richard v. Glens Falls National Bank* (N.D.N.Y. July 22, 2022) No. 1:20-cv-00734 (BKS/DJS), Dkt. No. 72 at ¶ 16 (granting $15,000 service award in overdraft fee class action); *Roberts v. Capital One* (S.D.N.Y. Dec. 2, 2020) No. 1:16-cv-04841-LGS, Dkt. No. 199 at 11 (granting $10,000 service award in overdraft fee class action); 5 Newberg and Rubenstein on Class Actions § 17:8 (6th ed.) (citing a 2011 study in which the average incentive award was found to be $11,697, or $14,371 in 2021 dollars).

The Court should therefore preliminarily approve the proposed service awards, subject to approval by the Class Members and to Class Counsel's forthcoming Final Approval motion.

## IV    ARGUMENT

### A.    The Settlement Should Be Preliminarily Approved

Preliminary approval of a settlement is warranted if "the proposed Settlement Agreement is within the range of possible settlement approval, such that notice to the Class is appropriate."

*O'Dell v. AMF Bowling Centers, Inc*., 2009 WL 6583142, at \*1 (S.D.N.Y. Sept. 18, 2009). Accordingly, preliminary approval amounts to "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-E. Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).

## 1.     The Rule 23(e) Criteria for Granting Preliminary Approval

Rule 23(e) specifies that the focus of a court's preliminary approval evaluation is whether "giving notice [to the class] is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(e)(2) establishes that where a settlement would bind class members, the court may approve it after finding that it is fair, reasonable, and adequate after considering whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and, (D) the proposal treats class members equitably relative to each other. "The central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate." Advisory Committee Notes to 2018 Amendments to Fed. R. Civ. P. 23. "The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* However, "[a]t the preliminary approval stage, the court is simply determining whether it is 'likely' these . . . requirements for settlement approval will be met at the final approval stage. 4, *Newberg on Class Actions* § 13:14 (procedural requirements), § 13:15 (substantive requirements) (5th ed.). The proposed settlement meets these criteria, and Second Circuit law.

## 2.     The Settlement Is Reasonable, Fair, and Adequate Given the Strength of the Case and the Risks of Litigation

As already detailed in Section I, *supra*., the proposed settlement is for \$2,750,000. The

aggregate possible class damages at issue in this case amount to approximately $3,678,694.  (Olsen Decl. ¶ 10.)  This damages total was determined by Plaintiffs' expert, Arthur Olsen, using sample class transaction provided by Defendant.  (*Id.*)  This data enabled Mr. Olsen to identify the Retry NSF and APPSN fees assessed against class members during the sample months and perform an extrapolation to arrive at an estimate of class-wide damages across the entire Class Period.  (*Id.*)  Specifically, Mr. Olsen's calculations, applying a 5% refund rate, yielded a damages amount of $2,088,171 under the Retry NSF theory, and $1,590,523 under the APPSN theory, for a total of $3,678,694 in damages.  (*Id.*)  This means that the proposed settlement amounts to approximately 75% of the total damages without interest likely to be awarded at trial were plaintiffs to prevail. (Kick Decl. ¶ 7.)

This recovery for class members is well within the range of reasonableness for class action litigation in this Circuit and elsewhere, as is evident when it is compared to recoveries in similar overdraft fee class actions.  *See, e.g., Broockmann v. Bank of Greene Cnty.*, No. 122CV00390AMNATB, 2023 WL 7019273, at *10 (N.D.N.Y. Oct. 25, 2023) (approving settlement in the amount of "52% of Defendant's potential damages exposure"); *Lowe v. NBT Bank, N.A.*, No. 319CV1400MADML, 2022 WL 4621433, at *9 (N.D.N.Y. Sept. 30, 2022) (approving settlement in the amount of "48% of Defendant's potential damages exposure"); *Edwards v. Mid-Hudson Valley Fed. Credit Union*, No. 122CV00562TJMCFH, 2023 WL 5806409, at *9 (N.D.N.Y. Sept. 7, 2023) (approving settlement in the amount of "50% of Defendant's potential damages exposure"); *Roberts v. Capital One*, 16 Civ. 4841 (LGS), Dkt. 198 (S.D.N.Y. Dec. 1, 2020) (approving cash fund of approximately 35% of the most likely recoverable damages for class members).

The risks in the case include that a trier of fact might still agree with Defendant that the

language in the contracts at issue actually did allow the Defendant to assess fees in the manner it did.  (Kick Decl. ¶ 11.) Plaintiffs prevailed on this issue at the Motion to Dismiss stage, but there still remained risk that at Summary Judgment or at trial, a trier of fact might rule otherwise.  (*Id.*) Further, there has not yet been a grant of class certification in this case.  Although Plaintiffs believe this case is very strong for certification, this nonetheless presents another risk.  (*Id.*)  If the matter went all the way to trial, whichever party did not prevail at trial likely would appeal, causing more delay and more costs before class members received their money, even if Plaintiffs prevailed at trial and on appeal.  (*Id.*)  Such additional activity could result in substantial additional attorneys' fees and costs.  (*Id.*)

### 3.     The Settlement Treats Class Members Equally

As set forth in Section III.C., *supra*, under the settlement, all class members will receive a *pro rata* distribution based on the amount of eligible fees they incurred.  (SA ¶ 7(d)(iv).)

### 4.     The Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) instructs the Court to consider whether the proposed settlement was negotiated at arm's length. The Court "must review the negotiating process leading up to the settlement for procedural fairness, to ensure that the settlement resulted from an arm's-length, good faith negotiation between experienced and skilled litigators." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013) (citing *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803–04 (2d Cir. 2009). There is typically an initial presumption that a settlement is fair and reasonable when it was the result of arm's length negotiations between experienced, capable counsel after meaningful discovery. *McReynolds*, 588 F.3d at 804 ("We have recognized a presumption of fairness, reasonableness, and adequacy as to the settlement where "a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

Here, there is no doubt this occurred, as the settlement is the result of a mediation overseen

by the Hon. Randolph Treece (Ret.).  (Kick Decl. ¶¶ 6-7.)  As such, the presumption that the Settlement is fair is further strengthened. *Kemp-DeLisser v. St. Francis Hospital and Medical Center Fin. Committee*, 2016 WL 6542707 (D. Conn. Nov. 3, 2016), at *4 (finding that "the proposed Settlement resulted from informed, extensive arm's-length negotiations, including participating in mediation with an experienced mediator"); *In re Viropharma Inc. Sec. Litig.*, No. CV 12-2714, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016) (the "participation of an independent mediator in settlement negotiations virtually insures [sic] that the negotiations were conducted at arm's length and without collusion between the parties").  Further, this mediation was held following the exchange of class transaction data and expert analyses of the data, enabling both sides to negotiate in full view of the damages at issue.  (Kick Decl. ¶ 6.)

Finally, courts have consistently found that "[r]ecommendations of experienced counsel are entitled to great weight in evaluating a proposed settlement in a class action because such counsel are most closely acquainted with the facts of the underlying litigation." *Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 53 (W.D.N.Y. Oct. 23, 2018). Class Counsel is very experienced in consumer class actions, and have particular experience in overdraft fee class actions.  (Kick Decl. ¶¶ 2-3.)  Class Counsel has investigated the issues raised in this action, and favor the settlement.  (Kick Decl. ¶ 7.)

### 5.   The Proposed Forms of Notice and Notice Programs Are Appropriate

The proposed Postcard, Email, and Long Form notices are attached as Exhibits 1 to 3 of the Settlement Agreement. The proposed form of notice and notice program here fully comply with due process and Federal Rules of Civil Procedure, Rule 23.  Under Rule 23(c)(3), the notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court

will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members.  The notice here does that.  Further, similar notice programs as proposed here have most frequently yielded deliverable rates exceeding 90%. (Kick Decl. ¶ 10.)

In sum, notice should be disseminated here, given the arguments above, as it is "likely that the court will be able to approve the proposal after notice to the class and a final approval hearing." *See* Fed. R. Civ. P. 23 (e)(1), Advisory Committee's Note to 2018 Amendment.

### B.   The Proposed Settlement Class Should Be Certified

In granting preliminary approval of a proposed settlement, the Court also must determine that the proposed settlement class is appropriate for certification. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, the proposed class representative, and the proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P. 23(a)(1-4). In addition to meeting the requirements of Rule 23(a), a plaintiff seeking class certification must also meet at least one of the three provisions of Rule 23(b). Fed. R. Civ. P. 23(b). When a plaintiff seeks certification under Rule 23(b)(3), the representative must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16.

All of the Rule 23(a) and 23(b)(3) prerequisites are satisfied here.

### 1.   The Requirement of Numerosity Is Satisfied

Rule 23 requires "the class [be] so numerous that joinder of all customers is impractical." Fed. R. Civ. P. 23(a)(1). Here, there are thousands of class members. (Kick Decl. ¶ 7.)  Thus, numerosity is met. *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) (numerosity is presumed when a class includes over 40 members).

### 2.    The Requirement of Commonality Is Satisfied

The second requirement for certification requires that "questions of law or fact common to the class" exist. Fed. R. Civ. P. 23(a)(2). Commonality is demonstrated when the claims of all class members "depend upon a common contention . . . that is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Commonality demands only the existence of a "single common question." *U.S. v. City of New York,* 276 F.R.D. 22, 28 (E.D.N.Y. 2011) (quoting *Dukes*, 131 S. Ct. at 2556). Here, not only do there exist common questions of law or fact, the common questions predominate over any individual ones. It is not disputed that the liability theories underlying the class claims involve uniform fee practices and uniform contractual terms. Common questions include whether Defendant was contractually permitted to assess multiple fees on a single item, and whether Defendant was contractually permitted to assess overdraft fees on point of sale debit card transactions that were authorized on a sufficient available balance but later settled negative. Determination of the meaning of the language in the contracts at issue will resolve the allegations for all of the class members equally.

### 3.    The Requirement of Typicality Is Satisfied

Rule 23 next requires that the class representative's claims be typical of those of the class members. Fed. R. Civ. P. 23(a)(3). The test for typicality is not demanding; it requires only that the class representative's "claim arises from the same course of events, and each class member makes similar legal arguments to prove defendants' liability." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); see also 1 Newberg on Class Actions § 3.13, at 3-76 (3d ed. 1992) ("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.") Further, representative claims need not be identical to class members' claims in order to be typical. *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL

1634872, at *3 (S.D.N.Y Apr. 4, 2018).  Plaintiffs' claims here are not only typical of those of the other putative class members, they are essentially identical: Plaintiffs were assessed the same sort of overdraft fees or NSF fees as the class members, and entered into the same uniform agreements as did other class members, and were assessed NSF fees and overdraft fees by the same automated software system in the same alleged improper manner as were other Class members.  (Kick Decl. ¶ 8.)  Further, Plaintiffs and the Classes seek redress via common legal claims.

Typicality is satisfied.

### 4.    The Requirement of Adequate Representation Is Satisfied

The final Rule 23(a) prerequisite requires that the proposed class representative has and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Resolution of two questions determines adequacy of representation: (1) does the named plaintiff have any conflicts of interest with prospective class members and (2) is class counsel qualified, experienced, and able to vigorously prosecute the interests of the class? *Duprey v. Connecticut Dept. of Motor Vehicles,* 191 F.R.D. 329, 337 (D. Conn. 2000). As with the typicality requirement, this element requires that the interests of the named plaintiffs are aligned with the unnamed class members to ensure that the class representative has an incentive to pursue and protect the claims of the absent class members. *See Amchem*, 521 U.S. at 626 n. 20, 117 S.Ct. 2231 ("The adequacy-of-representation requirement 'tends to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether…the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'")

Proposed Class Counsel have significant class action, litigation, and trial experience, are competent, and have been competent in representing the classes. (Kick Decl. ¶¶ 2-3.) Further, they

17

have been approved as class counsel in numerous other overdraft fee class actions, including in the Northern District of New York.  (*Id*.) The interests of the four named Plaintiffs are not antagonistic to those of the other class members; in fact, their interests are wholly aligned because they were charged the same fees as other class members.  (Kick Decl. ¶ 8.)  Further, they have actively participated in the litigation, and understand that they are pursuing this case on behalf of all class members similarly situated and understand they have a duty to protect the absent Class members. (Livingston, Scroggins, Lamoureux, Jenkins Decl., at ¶ 3;  *see also*, Kick Decl. ¶¶ 8-9.)

### 5.    The Proposed Settlement Class also Satisfies Rule 23(b)(3)

Once the prerequisites of Rule 23(a) have been met, a plaintiff must also demonstrate that she satisfies the requirements of Rule 23(b). To certify a class under Rule 23(b)(3), the plaintiff must show that (1) the common questions of law and fact predominate over questions affecting only individuals and (2) the class action mechanism is superior to other available methods for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

### a.    Common Questions of Law and Fact Predominate

When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016).  The predominance requirement questions whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "The predominance requirement is met when the defendant's wrongful acts involve common practices and/or standardized documents, or when defendants put forth a common defense." *Cohen v. J.P. Morgan Chase & Co*., 262 F.R.D. 153, 159 (E.D.N.Y. 2009). "Or, to put it another way, common questions

can predominate if a 'common nucleus of operative facts and issues' underlies the claims brought by the proposed class." *In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006). Here, it is not disputed that the language used in the relevant customer accounts is the same for all class members, and thus it would be far more efficient to decide those common issues via the class action mechanism. Trustco does not dispute its practice of charging the Retry NSF or APPSN fees as alleged in the operative Complaint. Rather, it argues that it was allowed to do this under the terms of its contracts. The predominating issue is therefore whether the contracts permitted this conduct. The determination of this predominating question would likely be dispositive of the case for all class members. Predominance is met.

### b.     This Class Action Is the Superior Method of Adjudication

Rule 23(b)(3) also requires that a certifying court find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 100 (D. Conn. 2010) (quoting *Amchem*, 521 U.S. at 617). "Accordingly, class treatment is often deemed superior in 'negative value' cases, *i.e.* where each individual class member's interest in the litigation is less than the anticipated cost of litigating individually." *Id.* Here, it is undisputed that each class member's claim is small, making it uneconomic to pursue the claims individually.

### C.     Proposed Schedule of Future Dates

The next steps in the settlement approval process are to notify the Class of the proposed Settlement, allow an opportunity for opt-outs and objections, and to hold a fairness hearing. The parties propose the following dates, assuming such dates are acceptable to this Honorable Court:

| | |
|---|---|
| Defendant Transfers Class List to Settlement Administrator | Within ten (10) days of entry of Court's Preliminary Approval Order |
| Settlement Administrator Sends Notice and Website Goes Live | Thirty (30) days after Defendant Transfers Class List |
| Last Day for Individuals to Opt Out of Settlement Class | Thirty (30) days after the Notice is sent to members of the Settlement Class |
| Motion for Final Approval and Attorneys' Fees Filed with Court | Thirty-Five (35) days After Settlement Administrator Sends Notice |
| Last Day to Object to Settlement Agreement | Fifteen (15) days after the filing of the Motion for Final Approval |
| Last Day to File Responses to Objections | Five (5) days after the Last Day to Object |
| Final Approval Hearing | [Five (5) days after the Last Day to File Responses to Objections] <br><br> Court Order: _____ |
| Filing by Settlement Administrator of Final Report | Thirty (30) days After Time to Cash Checks has Expired |

## V      CONCLUSION

Plaintiffs respectfully request that the Court: (1) preliminarily approve the Settlement; (2) approve the proposed plan of notice to the Class; (3) appoint the lower bidder of the three claims administrators to administrate the program outlined in this motion; (4) set a schedule of dates as set forth above for further action on this Settlement Agreement, including a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to determine whether the proposed Settlement is fair, reasonable, and adequate and should be finally approved.

Dated: February 14, 2024                          Respectfully submitted,

By:      /s/ *Taras Kick*
Taras Kick (*admitted pro hac vice*)

20

Taras@kicklawfirm.com
Tyler J. Dosaj (*admitted pro hac vice*)
Tyler@kicklawfirm.com
THE KICK LAW FIRM, APC
815 Moraga Drive
Los Angeles, CA 90049
Telephone: (310) 395-2988
Facsimile: (310) 395-2088

J. Patrick Lannon, Bar Roll No. 516843
plannon@cherundololawfirm.com
CHERUNDOLO LAW FIRM, PLLC
AXA Tower I, 17th Floor
100 Madison Street
Syracuse, New York 13202
Telephone: (315) 449-9500
Facsimile: (315) 449-9804

*Attorneys for Plaintiffs and the Putative Class*

**CERTIFICATE OF SERVICE**

I, Taras Kick, hereby certify that on the 14th day of February, 2024, the foregoing

document, filed through the CM/ECF System, will be sent electronically to the registered

participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent

to those indicated as non-registered participants.


/s/ *Taras Kick*